THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. KIRBY L. WHITE, Defendant-Appellee.

Second District   No. 2—00—1386

Opinion filed May 24, 2002.

Joseph E. Birkett, State's Attorney, of Wheaton (Margaret M. Healy, Assistant State's Attorney, and Stephen E. Norris and Patrick D. Daly, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

G. Joseph Weller and Paul Alexander Rogers, both of State Appellate Defender's Office, of Elgin, for appellee.

JUSTICE GROMETER delivered the opinion of the court:

In November 1998, defendant, Kirby L. White, was indicted for the offenses of forgery (720 ILCS 5/17—3(a)(2) (West 1998)) and theft by deception (720 ILCS 5/16—1(a)(2)(A) (West 1998)). The indictments alleged, in essence, that, on July 1, 1998, defendant delivered a check to an employee of Sears bearing the forged signature of Willie Wheaton to obtain by deception a lawn mower and weed whacker having a total value in excess of $300.

Defendant filed a motion to quash arrest and suppress evidence. The motion claimed that the warrantless detention of defendant by police in order to inquire about the items in the car (the items) was unrelated to the original basis for the traffic stop and exceeded the legal scope of that stop and that the detention violated defendant's right to be free from unreasonable searches and seizures as guaranteed by the provisions of the federal and state constitutions (U.S. Const., amend. IV; Ill. Const. 1970, art. I, § 6). Defendant sought to suppress certain physical evidence as well as the statements he made as a result of the detention.

After a suppression hearing on July 28, 2000, the trial court suppressed defendant's statements related to the items, but not the physical evidence, which the court believed ultimately would have been discovered pursuant to an inventory search. The State's motion to reconsider was denied, and the State has timely appealed. See 188 Ill. 2d R. 604(a)(1).

On appeal, the State argues that the trial court appears to have made its ruling based on its misperception that there was a *Miranda* violation. The State asserts that it has found no authority that prohibits *per se* an officer from making inquiries during the course of a valid traffic stop that are unrelated to the reason for the stop, provided the stop and the length of the detention are otherwise lawful. The State further asserts that, because there was no factual basis for the trial court's ruling on *Miranda* grounds and the court ruled in the State's favor on fourth amendment grounds, there is nothing for this court to do but reverse the judgment and remand the cause. Even though the trial court denied the State's motion to reconsider, including a request to put on more evidence regarding defendant's statements—particularly with respect to the *Miranda* issue—the State now specifically requests that this cause *not* be remanded for an evidentiary hearing on the *Miranda* issue because defendant never validly raised a fifth amendment claim.

Defendant argues that the State incorrectly assumes that the suppression order was premised on a finding of a *Miranda* violation. Defendant argues that this court should affirm the order suppressing the

statements made by defendant because the record shows that the arresting officer violated the fourth amendment by questioning defendant about matters wholly unrelated to the stop, thereby transforming a valid traffic stop into an unreasonable seizure. The parties cite apparently conflicting cases regarding whether, absent reasonable suspicion, the questioning of a detained motorist by police about matters wholly unrelated to the purpose of the traffic stop transforms the stop into an unreasonable stop because the questioning exceeds the purpose or scope of the stop. See, *e.g.*, *United States v. Childs*, 277 F.3d 947 (7th Cir. 2002) (rehearing *en banc*) (officer did not render detention of passenger for seat belt violation unreasonable by asking questions unrelated to that charge); *United States v. Holt*, 264 F.3d 1215 (10th Cir. 2001) (rehearing *en banc*) (majority holding by Ebel, J., that during routine traffic stop officer may ask motorist whether there is a loaded firearm in the car even in absence of particularized suspicion; majority holding by Briscoe, J., that reasonableness of traffic stop must be judged by examining both *scope* and *duration* of detention; criticizing *United States v. Shabazz*, 993 F.2d 431 (5th Cir. 1993) (questioning by officer, even on matters unrelated to purpose of stop, does not cause stop to become more intrusive unless questioning extends duration of stop)). Defendant does not challenge the trial court's order denying the suppression of the physical evidence, and the initial legal justification for the traffic stop is not disputed by either party. For the reasons that we shall explain, the police questioning rendered the detention unreasonable, at least in part, and defendant's statements resulting from that part of the detention must be suppressed. We affirm the suppression order.

At the suppression hearing, Detective Robert Lee of the Naperville police department testified that on July 1, 1998, he stopped a brown Mercury Grand Marquis station wagon because the driver (defendant) failed to signal while changing lanes. Lee activated his squad car's emergency lights, and the station wagon pulled over. When Lee walked over to the vehicle, he observed a lawn mower and a weed whacker in the back of the vehicle. He asked to see defendant's driver's license and proof of insurance and informed him of the reason for the stop. Defendant identified himself as Stanley Smith and informed Lee that he did not have an Illinois driver's license; however, he did currently possess an Arkansas driver's license. The next thing Lee did was to ask defendant if he had any receipts for the items Lee observed in the back of the station wagon. Defendant gave him the receipts. The name on the receipts was Willie Wheaton. Lee inquired about Willie Wheaton and also asked defendant where the items came from.

Lee asked defendant to exit the vehicle, escorted defendant to the

rear of the car, and conducted a computer check of defendant's driver's license. Defendant was not free to leave. They waited for about three to five minutes for the results of the computer check. Lee had no information regarding any crime concerning the lawn mower and the weed whacker. The dispatcher informed Lee that defendant's Arkansas license was suspended. Lee asked for a backup. When the backup arrived, defendant was placed under arrest for driving with a suspended license. Defendant and his car were searched. An Illinois state agency identification card and numerous checkbooks were recovered from the car.

Defendant also made additional statements to Lee while waiting for the license check result, which showed that defendant's license was suspended. When defense counsel asked Lee whether the additional statements were made regarding the ownership and possession of the lawn mower and weed whacker, Lee answered, "Yes, the forgery at Sears." After defendant was arrested, Lee learned that defendant's name was Kirby White.

The trial court ruled that the initial stop was lawful. However, with respect to the statements made during the time period from the stop to the return of the license check, the court stated that "this is not casual conversation that you would suspect of the summer days." The court suppressed defendant's statements made as the result of the officer's questioning but did not suppress the physical evidence.

■ Initially, we address the issue first raised by the State: whether the court's ruling was based on a violation of the *Miranda* rule. *Miranda v. Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602 (1966). Under the *Miranda* rule, the prosecution may not use statements arising from the custodial interrogation of a defendant unless certain procedural safeguards have been used to secure the defendant's fifth amendment privilege against self-incrimination. These safeguards include warning the person that he has a right to remain silent; that any statement he makes may be used as evidence against him; and that he has the right to the presence of an attorney, either retained or appointed. Here, the trial court did not make its initial ruling based on a *Miranda* violation, although it is clear that the court found the questioning impermissible. In ruling on the motion to reconsider, the court did refer to a case concerning an unlawful interrogation where a *Miranda* warning was given and where the questioning was designed to elicit an incriminating response. See *People v. Elliot*, 314 Ill. App. 3d 187 (2000). However, in *Elliot*, the custody itself was found to be unlawful because there was no probable cause to arrest.

■ Here, the trial court made it clear that the statements were suppressed because they were unrelated to the purpose of the traffic

stop. Defendant concedes that the statements were not obtained in violation of *Miranda* because defendant was not yet in custody but was merely detained at the time. See *Berkemer v. McCarty*, 468 U.S. 420, 82 L. Ed. 2d 317, 104 S. Ct. 3138 (1984) (the usual traffic stop is more analogous to a *Terry* stop than to a formal arrest, and the motorist is not in custody for *Miranda* purposes). Since defendant was not in custody at the time of the questioning, a *Miranda* analysis is irrelevant here. We thus next consider whether the police questioning unrelated to the purpose of the stop rendered a portion of the detention unreasonable under the fourth amendment because the questioning exceeded the scope of the stop.

■ When a trial court's ruling on the lawfulness of a search or seizure involves factual determinations or credibility assessments, the decision will be reversed on appeal only if it is manifestly erroneous. However, when there is no factual or credibility dispute and the question involves only the application of the law to the undisputed facts, our review is *de novo*. *People v. Robinson*, 322 Ill. App. 3d 169, 172-73 (2001). Since the issue here is essentially a legal one, our review is *de novo*.

■ A limited investigatory stop or seizure by the police is permissible only when based upon reasonable and articulable suspicion of criminal conduct, that is, when the officer reasonably infers from all the facts and circumstances that the person has committed or is about to commit a crime. See *Terry v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968); *People v. Ertl*, 292 Ill. App. 3d 863, 868 (1997). The ultimate test of the constitutionality of a search or seizure is reasonableness, and the inquiry concerns whether the officer's conduct was reasonable under the circumstances known to the officer at the time the stop was initiated; the officer's inferences must be based on more substantial facts than would support a mere hunch. *Ertl*, 292 Ill. App. 3d at 868. The reasonableness of the police conduct depends upon balancing the public's interest and the individual's right to personal security free from arbitrary interference by law officers. *Ertl*, 292 Ill. App. 3d at 869.

■ A routine traffic stop or investigative detention is generally analyzed under the *Terry* standard. *Berkemer*, 468 U.S. at 439, 82 L. Ed. 2d at 334, 104 S. Ct. at 3150 (traffic stop is analogous to *Terry* stop); *People v. Brownlee*, 186 Ill. 2d 501 (1999) (analyzing reasonableness of traffic stop under *Terry* standard). As the *Brownlee* court explained, the "Court in *Terry* set forth a dual inquiry for deciding whether an officer's investigative detention is reasonable: (1) 'whether the officer's action was justified at its inception' and (2) 'whether it was reasonably related in scope to the circumstances which justified

the interference in the first place.' " *Brownlee*, 186 Ill. 2d at 518-19, quoting *Terry*, 392 U.S. at 19-20, 20 L. Ed. 2d at 905, 88 S. Ct. at 1879. The *Brownlee* court explained that the principles applicable to the second prong of this judicial inquiry were further elaborated on in *Florida v. Royer*, 460 U.S. 491, 75 L. Ed. 2d 229, 103 S. Ct. 1319 (1983) (plurality opinion). In *Royer*, the Court stated that "an investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop" and it is "the State's burden to demonstrate that the seizure it seeks to justify *** was sufficiently limited in *scope* and *duration* to satisfy the conditions of an investigative seizure." (Emphasis added.) *Royer*, 460 U.S. at 500, 75 L. Ed. 2d at 238, 103 S. Ct. at 1325-26; see *Brownlee*, 186 Ill. 2d at 519. *Brownlee* further determined that where an officer's confinement of a person goes beyond the limited restraints of a *Terry* stop, a subsequent consent to search may be found to be tainted by the illegality of the detention. *Brownlee*, 186 Ill. 2d at 519.

In *Brownlee*, our supreme court held that the State failed to show that the officers' extended detention of the car's occupants after the initial purpose of the traffic stop was concluded was in any way reasonable or objectively justified or that the detention was sufficiently limited in scope or duration. The State thus waived the right to contest the trial court's determination that the evidence against the defendant must be suppressed. *Brownlee* typifies the case where a detention becomes unreasonable principally because the duration of the stop, even though brief, is unjustifiably extended without reasonable suspicion.

In this case, we are more concerned with the scope rather than the duration of the detention. We must decide whether the questioning about the items in the back of the car was reasonably related in scope to the circumstances that justified the interference in the first place, absent reasonable suspicion to conduct this type of questioning. Because of its facts, this case appears to present a question of first impression in this jurisdiction, and we have considered conflicting opinions from other jurisdictions. We conclude that the questioning about the ownership of the goods, which was clearly intended to elicit possibly incriminating responses about a matter wholly unrelated to the traffic stop, was not reasonably related in scope to the purpose of the stop. Furthermore, the facts clearly establish that the officer had no independent reasonable and articulable suspicion to support this type of intrusion upon the privacy of the motorist.

This case was foreshadowed, by analogy, in *People v. Ross*, 289 Ill. App. 3d 1013 (1997). In *Ross*, the defendant was charged with the unlawful use of a weapon. Following a routine traffic stop for running

a red stoplight, officers discovered a gun in the backseat of the defendant's car after questioning him about whether he had a gun in the car. The reviewing court considered whether the officer's actions following the stop were reasonably related in scope to the circumstances which justified the interference in the first place. The reviewing court concluded that when the defendant produced a firearm identification card upon being stopped, this created an independent basis to expand the officer's initial stop because it was reasonable for the officers to assume that defendant had a gun and there was a reasonable concern for the officers' safety. The court held that when the police reasonably suspect the presence of a gun at a traffic stop, they may ask about its whereabouts without violating the fourth amendment.

In *United States v. Brignoni-Ponce*, 422 U.S. 873, 45 L. Ed. 2d 607, 95 S. Ct. 2574 (1975), the Court considered whether the fourth amendment limited the authority of federal agents to detain automobiles near the Mexican border in order to question the occupants about their citizenship and immigration status. Relying on *Terry*, the Court held that such detentions are permitted where the agents reasonably suspect that the occupants are illegal aliens. In so doing, the court stated that "the stop and *inquiry* must be 'reasonably related in scope to the justification for their initiation.' " (Emphasis added.) *Brignoni-Ponce*, 422 U.S. at 881, 45 L. Ed. 2d at 617, 95 S. Ct. at 2580, quoting *Terry*, 392 U.S. at 29, 20 L. Ed. 2d at 910, 88 S. Ct. at 1884.

In *United States v. Holt*, 229 F.3d 931 (10th Cir. 2000), the defendant, Dennis Holt, was stopped at a driver's license checkpoint. Officer Damon Tucker observed that Holt was not wearing a seat belt. Tucker asked Holt to exit the truck and join him in the patrol car. Tucker obtained Holt's license and began to write a warning. While doing so, but before completing the task, Tucker asked Holt whether there was anything he should know about in Holt's vehicle, such as loaded weapons or other items. Holt stated he knew what Tucker was referring to but he did not use "them" (drugs) anymore. Upon further questioning, Holt indicated he had previously used drugs but had not been involved with them for about a year or so. Tucker then asked to search Holt's vehicle, and Holt agreed. The officer proceeded to search the truck and found a loaded pistol. Drug paraphernalia was also found and Holt was eventually charged with drug offenses. Holt successfully moved to suppress his responses to the officer's questions and the evidence that was seized.

A divided panel of the reviewing court affirmed the trial court's suppression order. The panel concluded that Tucker exceeded the reasonable scope of the detention by questioning Holt about the posses-

sion of contraband while Tucker was writing the warning where the questioning was unrelated to the purpose of the stop and was not prompted by a reasonable suspicion of illegal activity or motivated by safety concerns.

Upon rehearing (*United States v. Holt*, 264 F.3d 1215 (10th Cir. 2001) (rehearing *en banc*) (*Holt* II)), two separate majorities concluded that a *Terry* analysis applies to traffic stops and that *Terry* requires an analysis of both the scope and duration of a stop to determine whether the stop comports with the fourth amendment requirement of reasonableness. The court assessed the reasonableness of the traffic stop "by considering the scope of the officer's actions and balancing the motorist's legitimate expectation of privacy against the government's law-enforcement-related interests." *Holt II*, 264 F.3d at 1220.

In contrast to the original panel's opinion, however, a majority of the court also concluded that an officer may ask the driver about the presence of *loaded* weapons in the absence of particularized, reasonable suspicion. A minority rejected this bright-line rule, pointing out that there was no evidence that Holt was armed and dangerous and implying that this was an unwarranted expansion of *Terry*, which only permits a limited search for weapons where there is a reasonable suspicion that the driver is armed and dangerous. *Holt*, 264 F.3d at 1230-36 (Briscoe, J., joined in parts III and IV by Seymour, Lucero, and Murphy, JJ.).

*Holt II* also rejected the government's position, as exemplified by *United States v. Shabazz*, 993 F.2d 431 (5th Cir. 1993), that, as long as the officer's interrogation or questioning does not unreasonably extend the length of the stop, the fourth amendment is not implicated. The *Holt II* court refused to abandon the "scope" limitation of *Terry* and look only to the duration of the stop. *Holt II*, 264 F.3d at 1228.

In *Shabazz*, police officers stopped a car driven by Shabazz for speeding. Parker, a passenger, was the owner of the car. While running a computer check on Shabazz's license, the officers questioned Shabazz and Parker individually concerning their recent whereabouts. Based on conflicts in the detainees' stories, the officers sought and received consent from Parker to search the car. The police found cocaine secreted in an air conditioner vent, and Shabazz and Parker were arrested, charged with drug offenses, and convicted. On appeal, the defendants argued that the officers exceeded the reasonable scope of the original purpose of the stop when they were questioned about their recent whereabouts. Although the court recognized that under appropriate circumstances extensive questioning about matters wholly unrelated to the purpose of a routine traffic stop may violate the fourth amendment (citing *United States v. Kelley*, 981 F.2d 1464, 1470

(5th Cir. 1993) (*dictum*)), the Fifth Circuit rejected "any notion that a police officer's questioning, even on a subject unrelated to the purpose of the stop, is itself a Fourth Amendment violation." *Shabazz*, 993 F.2d at 436. The *Shabazz* court noted that the questioning occurred while the officers were waiting for the results of the computer check and thus did nothing to extend the duration of the initial, valid seizure, and the detention to that point continued to be supported by the facts that justified its initiation. The court ultimately found that the search was consensual. *Shabazz*, 993 F.2d at 437, 439. *Shabazz* suggests that scope is coextensive with duration.

The *Holt II* court found *Shabazz* unpersuasive because that court relied heavily on the Supreme Court's statement in *Florida v. Bostick*, 501 U.S. 429, 434, 115 L. Ed. 2d 389, 398, 111 S. Ct. 2382, 2386 (1991), that mere police questioning does not constitute a seizure. According to *Holt II*, the problem with that statement is that it was made by the Court in determining whether the random questioning of bus passengers by police constituted a seizure and concluding that such encounters were consensual and not seizures. The Court did not address the issue raised in *Shabazz*—whether in the context of a nonconsensual police-citizen encounter, police questioning on matters unrelated to the purposes of the initial stop can be so intrusive as to violate the fourth amendment. *Holt II*, 264 F.3d at 1229. The *Holt II* court made it clear that scope and duration were entirely separate dimensions of a traffic stop for analytical purposes.

In *United States v. Childs*, 277 F.3d 947 (7th Cir. 2002) (rehearing *en banc*), the defendant, Tommie Childs, was a passenger in a car stopped for an obstructed windshield. He was not wearing a seat belt. The car had been stopped before. While Officer James Chiola's partner was running a license and warrant check on the driver, Chiola asked Childs about the windshield (Childs said it was not his car), whether he was carrying marijuana this time (Childs said no), and whether he would consent to a search (Childs agreed). During the search, Chiola found crack cocaine. Childs was prosecuted for a drug offense and was convicted. On appeal, the original panel had held that the second question effected an unconstitutional seizure because the traffic stop was unrelated to drugs and Chiola had no reason to think that Childs was carrying drugs.

Relying on *Florida v. Bostick* and other Supreme Court decisions, the *en banc* court determined that, because questions are neither searches nor seizures, the police need not demonstrate justification for each inquiry even though the person is detained or in custody; the court noted that the detainee may refuse to answer. The court agreed with *Shabazz* and concluded that questions during traffic stops are not

seizures and thus do not require probable cause or reasonable suspicion. The court did recognize, however, that *questioning* may render the physical detention unreasonable, especially where it is unjustified and prolongs the detention. The court concluded that one question about marijuana was not unreasonable and that the consent to search was voluntary. *Childs*, 277 F.3d at 950-52.

The *Childs* court was also aware that other federal circuit courts have held that police questions must have some reasonable relation to the stop or be supported by some independent source of reasonable suspicion to be lawful. See *United States v. Murillo*, 255 F.3d 1169 (9th Cir. 2001) (during traffic stop, police may ask questions reasonably related in scope to the basis for the stop; in order to broaden scope of questioning, officer must articulate particularized and objective suspicious factors); *United States v. Ramos*, 42 F.3d 1160, 1163 (8th Cir. 1994) (reasonable investigation after traffic stop may include asking for driver's license and registration, requesting driver to sit in patrol car, and asking driver about destination and purpose; and if reasonably related questions raise inconsistent answers or license and registration do not check out, officer's suspicions may be raised so as to enable him to expand scope of stop and ask more intrusive questions; where no objective circumstances supply officer with additional suspicion, officer should not expand scope of stop). See also *United States v. Perez*, 37 F.3d 510 (9th Cir. 1994) (questions asked during investigative stop must be reasonably related in scope to the basis for the inquiry; questions were based on reasonable suspicion under circumstances presented and consent to search was voluntary); *United States v. Barahona*, 990 F.2d 412 (8th Cir. 1993) (similar rule).

In *Childs*, Judge Cudahy concurred with the result because he thought there was reasonable suspicion that Childs possessed marijuana. However, Judge Cudahy agreed with *Holt*'s view that both the scope and duration of a stop or seizure must be part of the reasonableness inquiry and that the duration of the stop cannot be the only dimension of reasonableness (as suggested by *Shabazz*). Thus, the police may not ask questions unrelated to the purpose of the traffic stop unless there is an independent source of reasonable suspicion. *Childs*, 277 F.3d at 956 (Cudahy, J., concurring). Judge Cudahy found inapplicable the proposition relied on by the majority and often stated by the Supreme Court (such as in *Bostick*)—that mere questioning by police does not constitute a seizure—since that rule has been applied to the police questioning of undetained persons in public places and the encounters were presumably consensual. *Childs*, 277 F.3d at 957 (Cudahy, J., concurring) (and cases cited therein).

Some state reviewing courts have recently held that questioning

during a traffic stop (before the purpose of the detention is satisfied) that is not reasonably related to the original purpose of the stop exceeds the scope of the investigation and renders the detention unreasonable under the fourth amendment unless there is a reasonable suspicion·of other criminal activity. See, *e.g., State v. Gibbons*, 248 Ga. App. 859, 547 S.E.2d 679 (2001) (during stop for seat belt violation, officer's questions unrelated to stop, including questions about drugs and weapons while officer held driver's license, rendered stop unreasonable and subsequent consent to search was invalid); *State v. Mitchell*, 265 Kan. 238, 960 P.2d 200 (1998) (detention of defendant was unreasonable where defendant was stopped for speeding and officer, after checking license and registration and, without reasonable suspicion, asked a number of questions, including questions about prior arrests and drugs, and asked permission to search car rather than issuing ticket or warning and giving defendant an opportunity to leave); *State v. Taylor*, 126 N.M. 569, 973 P.2d 246 (App. 1998) (police impermissibly expanded scope of detention for littering when, during warrant check, while holding license and without reasonable suspicion, police asked questions unrelated to stop about presence of illegal drugs, alcohol, and guns, asked to search car, and defendant agreed; consent was invalid; police are not entitled to go on fishing expeditions simply because the investigation is continued while waiting for the results of the warrant check). Other jurisdictions have reached opposite conclusions. See, *e.g., State v. Hickman*, 335 N.J. Super. 623, 763 A.2d 330 (2000) (relying in part on *Shabazz*); *State v. Gaulrapp*, 207 Wis. 2d 598, 558 N.W.2d 696 (1996) (relying in part on *Shabazz*).

Because of the widespread abuse of existing law that allows the police to obtain consent searches of every motor vehicle stopped for even the most minor traffic violations, the New Jersey Supreme Court has just decided, under that state's constitutional provisions similar to those of the fourth amendment, that an officer may not request consent to search a vehicle during a routine traffic stop unless there is articulable suspicion that the search will uncover evidence of a crime. *State v. Carty*, 170 N.J. 632, 790 A.2d 903 (2002). The *Carty* court explained that it is virtually impossible to drive and not unwittingly commit some infraction of the motor vehicle laws. Thus a substantial number of drivers are at risk of being pulled over and asked by officers for consent to search their vehicles at the officers' discretion, and motorists may sacrifice their right to privacy and consent to a search in order to escape with only a warning. The court cited empirical studies showing that, although 95% of motorists consented to searches (based on requests that were sometimes intimidating), 4 out of 5 persons who submitted to consensual searches were innocent of any

wrongdoing. The court held that a suspicionless consensual search would be deemed unconstitutional *whether it preceded or followed the completion of the traffic stop* so as to prevent the police from turning a routine traffic stop into a fishing expedition. *Carty*, 170 N.J. at 647, 790 A.2d at 912. While this decision is based principally on state rather than federal search and seizure law, it is nevertheless instructive, at least by analogy.

■ Based on our review of the case law, we hold that a *Terry* analysis generally applies to the ordinary traffic stop and that *Terry* requires that the reasonableness of the stop must be analyzed with respect to both the scope of the stop (including its intrusiveness) and its duration. Scope and duration are two different dimensions of the *Terry* analysis. Thus we reject the suggestion by *Shabazz* that scope and duration are coextensive. See *Holt II*, 264 F.3d at 1228-29. Moreover, we disagree with that part of *Holt II* holding an officer may inquire about loaded weapons without a reasonable suspicion that the detainee may be armed and dangerous. See *People v. Ross*, 289 Ill. App. 3d 1013 (1997) (requiring reasonable suspicion). While a police officer making a lawful stop of a motorist is not precluded from making reasonable inquiries concerning the purpose of the stop, the scope of the activities and questioning by the police during an investigatory detention must be reasonably related to the circumstances that initially justified the stop. See *Perez*, 37 F.3d at 513. An officer may expand the scope of his detention beyond that which is reasonably related to the circumstances only when the officer has a reasonable and articulable suspicion that other criminal activity may be afoot or where matters that arise during the course of the stop cause the officer reasonable suspicion. See *Taylor*, 126 N.M. at 575-76, 973 P.2d at 252-53. Questioning wholly unrelated to the purposes of the stop, which is reasonably calculated to elicit incriminating responses, is impermissible unless supported by independent, reasonable, and articulable suspicion.

■ Nothing in this decision prohibits an officer from questioning a person on any subject during an ordinary consensual police-citizen encounter that does not rise to the level of a stop or seizure. However, when a person is effectively restrained, such as during an investigatory stop, then "the investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time." *Royer*, 460 U.S. at 500, 75 L. Ed. 2d at 238, 103 S. Ct. at 1325-26.

■ Here, the officer's questions regarding the ownership of the items in the car were intrusive and calculated to elicit possibly incriminating responses. They were wholly unrelated to the purpose of the

traffic stop and were unsupported by independent reasonable suspicion. Other than the traffic violation, the defendant was doing nothing unusual to indicate that other criminal activity was afoot. The police are not entitled to go on fishing expeditions to satisfy their curiosity or their hunches while waiting for the results of the computer check. The State has failed in its burden to demonstrate that this part of the detention was sufficiently limited in scope that it satisfied the conditions of the investigative seizure. See *People v. Brownlee*, 186 Ill. 2d 501, 519 (1999). The trial court's suppression order must be affirmed.

The judgment of the circuit court of Du Page County is affirmed, and the cause is remanded for further proceedings.

Affirmed and remanded.

McLAREN and BOWMAN, JJ., concur.