No. 2--02--1069 & 2--02--1070 cons. 

______________________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

______________________________________________________________________________

THE PEOPLE OF THE STATE ) Appeal from the Circuit

OF ILLINOIS, ) Court of Kane County.

)

Plaintiff-Appellant, ) 

)

v. ) Nos. 01--CF--3161

)        01--CF--3614  

)

OCTAVIANO MARUNGO, ) Honorable

) Grant S. Wegner,

Defendant-Appellee. ) Judge, Presiding. 

______________________________________________________________________________

JUSTICE BYRNE delivered 
the
 opinion of 
the
 court:

In case No. 01--CF--3161, 
defendant
, Octaviano Marungo, 
was indicted for two counts of unlawful use of a weapon within 1,000 feet of a school or park (720 ILCS 5/24--1(c)(1.5) (West 2000)), and three counts of unlawful use of a weapon (720 ILCS 5/24--1(a)(4) (West 2000)).  
In case No. 01--CF--3614, defendant was indicted for 
the
 offenses of unlawful possession of a controlled substance with intent to deliver (720 ILCS 570/401(c)(2) (West 2000)) and unlawful possession of a controlled substance (720 ILCS 570/402(c) (West 2000)). 
 Defendant filed a motion to quash arrest and suppress evidence in each case.  The trial court denied 
each
 motion on May 29, 2002, following an evidentiary hearing.  Defendant moved for reconsideration in light of
 this court's recent decision of 
People v. White
, 331 
Ill. App. 3d
 22 (2002), 
which was filed on May 24, 2002.  The
 trial court reversed each order and granted 
defendant
's motions.  T
he
 State
 appeals in both cases, contending that 
the
 trial court erred in applying 
White
 and granting defendant's motions to quash arrest and suppress evidence.  We consolidated 
the
 appeals, and for 
the
 following reasons, now affirm.

The salient facts of both cases are not in dispute and we will briefly set them forth here.  In case No. 01--CF--3161, 
Officer Steven Stemmet of 
the
 Aurora police department testified at 
the
 evidentiary hearing that a
round 3:22 p.m. on November 11, 2001, he saw 
defendant
's car fail to come to a complete stop at a stop sign.  He also observed that 
defendant
's car had a license plate placed on 
the
 dashboard.  Stemmet effected a traffic stop, approached 
the
 car, which was driven by 
defendant
, and asked for 
defendant
's driver's license and proof of insurance.  Stemmet returned to his squad car and ran a computer check on 
defendant
.  He found that there were no outstanding warrants, returned to 
defendant
's 
car, and informed 
defendant
 that he was going to write him two citations.  Stemmet testified that he did not see any criminal activity at that time
.  Stemmet asked 
defendant
 what he wanted to post as bond, but 
defendant
 never answered because Stemmet also asked 
defendant
 if he had anything illegal in 
the
 car.  Defendant responded no, and Stemmet then asked for consent to search his car.  After receiving consent, Stemmet searched 
the
 car and found a loaded Smith and Wesson .40-caliber handgun under 
the
 driver's seat.

Upon 
reconsideration, t
he
 trial court noted that 
White
 held that, while a police officer making a lawful stop of a motorist is not precluded from making reasonable inquiries concerning 
the
 purpose of 
the
 stop, 
the
 scope of 
the
 activities and questioning by 
the
 police during an investigatory detention must be reasonably related to 
the
 circumstances that initially justified 
the
 stop.  The court further noted that 
White
 held that questioning wholly unrelated to 
the
 purposes of 
the
 stop that is reasonably calculated to elicit incriminating responses is impermissible unless supported by independent, reasonable, and articulable suspicion.  In applying 
these
 principles
 to 
the
 facts
, the trial court found that
 
the
 request for consent to search was totally unrelated to 
the
 traffic offense, which was 
the
 basis for 
the
 stop, and 
that the
 request was calculated to elicit an incriminating response.  The court also found that there was no independent, reasonable, and articulable suspicion to form 
the
 basis for 
the
 request to search.  Accordingly, 
the
 trial court concluded that 
defendant
's fourth amendment rights were violated and 
the
 court 
granted 
defendant
's motion to suppress.

In case No. 01--CF--3614, 
defendant
 first testified at 
the
 evidentiary hearing that at approximately 7:15 p.m. on December 15, 2001, he was driving in Aurora and was pulled over by an unmarked Aurora police car and subsequently placed under arrest.  Defendant stated that he turned his turn signal on approximately 1,000 feet prior to making 
the
 turn.
  Officer Jeff Wiencek next testified that he observed 
defendant
's car make a turn without activating its turn signal within 100 feet prior to turning.  While 
Wiencek and his assistant, Officer Knepp, 
ran
 a license plate check, 
defendant
, the
 driver of 
the
 car, 
walked to a unit four houses away and returned to 
the 
car.  By that point, 
the
 license plate information returned and 
Wiencek 
went over to 
the
 car to speak with 
defendant
.  The car had stopped in 
the
 driveway before 
the
 officers had an opportunity to activate their lights and pull 
the
 car over.  Other than 
the
 traffic violation, Wiencek had not seen 
defendant
 commit any other crimes.  Wiencek and 
Knepp
 also wanted to speak with 
defendant
 because they considered 
defendant
's actions to be suspicious.  Wiencek testified that defendant had parked his vehicle at a house in an area where there were gang problems.  Further, 
defendant also acted suspiciously when he
 walked four houses away from where he parked, looked at 
the
 officers as he walked away, and stood by 
the
 door of 
a
 residence for a moment before he walked back to his
 car.  Because he felt this behavior was suspicious, 
Wiencek 
wanted to see whether there was any ongoing criminal activity other than 
the failure to 
properly signal a turn within 100 feet of an intersection.  As 
defendant
 returned to 
the
 car, Wiencek approached him and asked what he was doing.  Defendant replied that he was looking for somebody, but would not give 
the
 person's name or address.  Wiencek asked 
defendant
 for identification and 
defendant
 gave him an identification card.  Also, during 
the
 conversation, the officers asked 
defendant
 if 
they
 could look in his car.  Wiencek stated that the gang activity in that area was one 
reason why 
he wanted to investigate 
defendant
.  Wiencek admitted that he had not seen anything that made him think that 
defendant
 had a gun.  During his search, Knepp located two bags of cocaine.  
T
he
 traffic citation 
was not written until 
defendant
 was placed in custody and had been transported to 
the
 police station.
  

Upon reconsideration, based on 
White
, t
he
 trial court found that 
the
 request to search was totally unrelated to 
the
 traffic offense, which was 
the
 basis for 
the
 stop, and that 
the
 request was calculated to elicit an incriminating response.  The court further found that no evidence was presented to determine 
the
 nature of 
any
 gang-related problems and that it was not uncommon for people to look at 
the
 police to see what they were doing.  As such, the court concluded that no independent, reasonable suspicion had been articulated that could form 
the
 basis for requesting permission to search 
the
 car.  Accordingly
, 
the
 court concluded that 
defendant
's fourth amendment rights were violated, and it reversed its previous order and granted 
defendant
's motion to suppress.

ANALYSIS

The State contends on appeal that the trial court erred in 
applying 
White
 and granting defendant's motions to quash arrest and suppress evidence. 
 Essentially, 
the
 State argues that 
White
 holds that an officer cannot properly ask 
the
 
defendant
 for permission to search his car, unless that request is based on something related to 
the
 initial traffic stop or, alternatively, is based on some other criminal activity observed by 
the
 officer.  The State points out that in certain cases an officer may ask for permission to search a vehicle, even though such a request is unsupported by probable cause.  
See, 
e.g.
, 
United States v. Childs
, 277 F.3d 947, 950-51 (7th Cir. 2002).  The 
State fears that 
White
 will be increasingly expanded by 
the
 trial courts, as 
the
 trial court did in this appeal, in an almost "talismanic manner" to create a 
per
 
se
 rule.  
The State argues that such an analysis carries 
White
 beyond 
the
 parameters of 
the
 problem that arose in that particular case and creates a wholly unrealistic situation for police officers in traffic stop cases.  The State asserts that 
White
 should be limited to its facts in order to strike a better balance between protecting citizens from unwarranted interference with their privacy and serving their interests in 
the
 efficient and effective prevention and detection of crime.  The State asks us to reexamine our decision in 
White
 in light of its argument.  Finally, 
the
 State requests that we reexamine 
White
 in light of 
the
 recent Illinois Supreme Court opinion of 
People v. Gonzalez
, 204 
Ill. 2d
 220 (2003), and "make whatever adjustments and modifications that are necessary."  Accordingly, a brief overview of 
White
 and 
Gonzalez
 is necessary for 
the
 disposition of this appeal.

In 
White
, 
an officer 
pulled 
the
 defendant
 over for failing to signal a lane change and 
the
 officer observed a lawn mower and weed whacker in 
the
 back of 
the
 defendant
's station wagon.  The officer asked to see 
the
 
defendant
's driver's license and proof of insurance and informed him of 
the
 reason for 
the
 stop.  The officer then asked 
the
 defendant
 if he had any receipts for 
the
 items
.  The 
defendant
 gave him 
the
 receipts, and 
the
 officer observed that 
the
 name on 
the
 receipts was different from 
that of the
 
defendant
.  The officer inquired about 
the
 name on 
the
 receipts and asked 
the
 
defendant
 where 
the
 items came from.  Additional statements made by 
the
 
defendant
 
regarding 
the
 ownership and possession of 
the
 items, and a further check of 
the
 car during 
the
 computer check,
 subsequently revealed that 
the
 defendant
 had forged a check in order
 to obtain 
the
 lawn mower and weed whacker.  
White
, 331 
Ill. App. 3d
 at 25-26.

Under 
Terry v. Ohio
, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968), 
a dual analysis is applied in determining whether a traffic stop implicates 
the
 fourth amendment.  The first prong concerns whether 
the
 officer's action in stopping 
the
 vehicle was justified at its inception.  The second prong considers whether 
the
 officer's conduct following 
the
 stop was reasonably related in scope to 
the
 circumstances that justified 
the
 interference in 
the
 first place.  In 
White
, we were concerned with 
the
 scope of 
the
 detention 
and whether 
the
 questioning about 
the
 items in 
the
 back of 
the
 station wagon was reasonably related in scope to 
the
 circumstances that justified 
the
 interference in 
the
 first place, absent reasonable suspicion to conduct this type of questioning.  
White
, 331 
Ill. App. 3d
 at 28.  Based on our review of 
the
 relevant case law, we held
:

"While a police officer making a lawful stop of a motorist is not precluded from making reasonable inquiries concerning 
the
 purpose of 
the
 stop, 
the
 scope of 
the
 activities and questioning by 
the
 police during an investigatory detention must be reasonably related to 
the
 circumstances that initially justified 
the
 stop
. 
 [Citation.]  An officer may expand 
the
 scope of his detention beyond that which is reasonably related to 
the
 circumstances only when 
the
 officer has a reasonable and articulable suspicion that other criminal activity may be afoot or where matters that arise during 
the
 course of 
the
 stop cause 
the
 officer reasonable suspicion.  [Citation.]  Questioning wholly unrelated to 
the
 purposes of 
the
 stop, which is reasonably calculated to elicit incriminating responses, is impermissible unless supported by independent, reasonable, and articulable suspicion."  
White
, 331 
Ill. App. 3d
 at 34.

In applying 
the
 law to 
the
 facts, we found that 
the
 officer's questions regarding 
the
 ownership of 
the
 items in 
the
 car were intrusive, calculated to elicit possibly incriminating responses, wholly unrelated to 
the
 purpose of 
the
 traffic stop, and unsupported by independent, reasonable suspicion.  We further found that 
the
 
defendant
 was doing nothing unusual to indicate that other criminal activity was afoot.  Accordingly, we affirmed 
the
 trial court's suppression order.  
White
, 331 
Ill. App. 3d
 at 35.

In April 2003, one year after 
White
 was decided, 
the
 supreme court in 
Gonzalez
 conducted a thorough analysis to determine when and to what extent a police officer's conduct following a traffic stop satisfies 
the
 second prong of 
the
 
Terry
 test.  In 
Gonzalez
, 
the
 officer stopped a car, in which 
the
 
defendant
 was 
the
 passenger, for not having a front license plate.  The officer approached 
the
 car on 
the
 passenger's side.  He observed no criminal conduct by 
the
 
defendant
 either before or immediately after 
the
 stop, and asked him for identification.  The 
defendant
 complied.  Thereafter, 
the
 officer ran a criminal history check of 
the
 
defendant
.  The ensuing encounter between 
the
 officer and 
the
 
defendant
 resulted in a search of 
the
 
defendant
's person, revealing a packet of cocaine.  The 
defendant
 filed a motion to quash arrest and suppress evidence.  The 
trial court concluded that, absent any suspicion of criminal conduct by 
the
 
defendant
, 
the
 officer's request for identification was unreasonable.  On appeal to 
the
 supreme court, the defendant's sole contention 
was that 
the
 officer had no lawful basis to ask him for identification
.

The supreme court first discussed at length 
the
 divergence of opinion among 
the
 federal and state courts regarding 
the
 parameters of 
the
 
Terry
 "scope" requirement when determining 
the
 propriety of police questioning during a traffic stop.  See 
Gonzalez
, 204 
Ill. 2d
 at 229-32.  T
he
 supreme court noted that our appellate court also has not been uniform in its approach when determining 
the
 permissible scope of police questioning during a traffic stop.  
Gonzalez
, 204 
Ill. 2d
 at 232.  In particular, 
the
 supreme court cited 
White
 and 
noted the
 fact that we applied 
the
 
Terry
 framework in a manner similar to 
the
 approach adopted by one of 
the
 divergent federal courts with which 
Gonzalez
 disagreed.  
Gonzalez
, 204 Ill. 2d at 232; see 
United States v. Holt
, 229 F.3d 931 (10th
 Cir. 2000), 
rev'd upon rehearing en
 
banc
, 264 F.3d 1215 (10th
 Cir. 2001).

The supreme court concluded that 
the
 divergent approaches taken by various districts of 
the
 appellate court do not
 strike 
"the
 proper balance between 
the
 government's interest in effective law enforcement and 
the
 individual's interest in being free from arbitrary governmental intrusions, which lies at 
the
 core of 
the
 concept of 'reasonableness.' "  
Gonzalez
, 204 
Ill. 2d
 at 233.  Accordingly, in 
determining
 whether police questioning during 
the
 course of a traffic stop satisfies 
the
 second prong of 
the
 
Terry
 analysis, 
the
 court formulated 
the
 following framework
:  

"[W]e must consider, as an initial matter, whether 
the
 question is related to 
the
 initial justification for 
the
 stop.  If 
the
 question is reasonably related to 
the
 purpose of 
the
 stop, no fourth amendment violation occurs.  If 
the
 question is not reasonably related to 
the
 purpose of 
the
 stop, we must consider whether 
the
 law enforcement officer had a reasonable, articulable suspicion that would justify 
the
 question.  If 
the
 question is so justified, no fourth amendment violation occurs.  In 
the
 absence of a reasonable connection to 
the
 purpose of 
the
 stop or a reasonable, articulable suspicion, we must consider whether, in light of all 
the
 circumstances and common sense, 
the
 question impermissibly prolonged 
the
 detention or changed 
the
 fundamental nature of 
the
 stop."  
Gonzalez
, 204 
Ill. 2d
 at 235.

In applying 
the
 
Gonzalez
 framework, 
the
 court held that 
the
 officer's request for identification from 
the
 
defendant
 did not render 
the
 
defendant
's otherwise lawful detention unreasonable.  The stop of 
the
 vehicle was based on 
the
 officer's observation that 
the
 front license plate was missing, which was a violation of 
our
 vehicle code.  The 
defendant
, who was not implicated in 
the
 code violation and who was not suspected of any other wrongdoing was a passive occupant and therefore, 
the
 request for identification was not directly related to 
the
 initial justification for 
the
 stop and was not otherwise supported by a reasonable, articulable suspicion of criminal activity.  
Gonzalez
, 204 
Ill. 2d
 at 235-36.  The officer's question, however, "did not run afoul of 
the
 fourth amendment."  
Gonzalez
, 204 
Ill. 2d
 
at 236.  The request for identification was made during 
the
 course of 
the
 stop while 
the
 driver was being questioned by 
an
other officer and did not impermissibly prolong 
the defendant
's detention, nor did 
the
 question change 
the
 fundamental nature of 
the
 stop.  The court concluded that the question was a simple request for identification that was "facially innocuous" and did not suggest "official interrogation" nor was it 
the
 "type of question or request that would increase 
the
 confrontational nature of 
the
 encounter."  
Gonzalez
, 204 
Ill. 2d
 
 at 236. 

A
lthough 
Gonzalez
 did not expressly overrule 
White
, it is clear that 
Gonzalez
 has explicitly 
formulated 
the
 framework to be employed by 
our
 courts in determining 
whether police questioning during 
the
 course of a traffic stop implicates 
the
 fourth amendment. 
 At 
the
 time of 
the
 trial court's decision in 
the
 present case, 
Gonzalez
 had not yet been filed, and 
ordinarily, we would reverse and remand to 
the
 trial court for consideration in light of 
Gonzalez
's recent pronouncement
. 
 However, because t
he parties do not dispute 
the
 facts and 
the
 ultimate question posed by 
the
 legal challenge to 
the
 trial court's rulings is reviewed 
de
 
novo
, we can decide 
the
 matter in this court.  See 
Gonzalez
, 204 
Ill. 2d
 at 223 .

We note that, while 
the
 State argues that we should reexamine 
White
 in light of 
Gonzalez
 and asserts that
 
the
 facts in 
the
 present cases are different from those in 
White
, 
the
 State fails to argue  how 
the
 facts 
here satisfy 
the
 
Terry
 scope requirements set forth in 
Gonzalez
, 
such that 
the
 interrogations in each case did not run afoul of 
defendant
's fourth amendment rights.
  The State therefore has waived 
the
 right to challenge 
the
 trial court's holding that 
the
 officers' interrogations violated 
defendant
 's fourth amendment rights.

Even without waiver, however, 
the
 application of 
the
 principles espoused in 
Gonzalez
 to 
the
 present cases would lead us to conclude that 
the
 trial court's ruling were correct.  In case No. 01--CF--3161, 
the
 initial justification for 
the
 stop was 
the
 failure to stop at a stop sign and improper display of 
a 
license plate, violations of 
our vehicle 
code.  Stemmet did not observe any criminal activity but asked 
defendant
 if there was anything illegal in his car.  Thus, 
the
 question posed to 
defendant
 was not directly related to 
the
 initial justification for 
the
 stop and was not otherwise supported by a reasonable, articulable suspicion of criminal activity.  Unlike 
Gonzalez
, where 
the
 officer made a simple request for identification, which 
the
 court termed "facially innocuous," here, 
the
 officer asked 
defendant
 if there was anything illegal in his car
.  This question had no reasonable connection to 
the
 purpose of 
the
 stop and served only to prolong 
the
 detention of 
the
 vehicle and to change 
the
 fundamental nature of 
the
 stop into one that would increase 
the
 confrontational nature of 
the
 encounter.

An even stronger argument could be made in case No. 01--CF--3614.  The initial justification for 
the
 traffic stop was 
the
 failure to signal within 100 feet of a turn.  The officer here did nothing expected of an officer during 
the
 normal course of a traffic stop.  Wiencek
 approached 
defendant
 and asked for identification, which 
defendant
 provided, but did not check on 
defendant
's status.  Instead, Wiencek
 treated 
the
 encounter as a criminal investigation simply because 
defendant
 was in an area known to have gangs and 
because defendant
 parked in a driveway four doors away from another residence and watched 
the
 police as he returned to his car. 
 The trial court did not find this behavior suspicious and found that 
no independent, reasonable suspicion had been articulated that could form 
the
 basis for requesting permission to search 
the
 car
, and 
the
 State does not refute this finding.
  It is clear that Wiencek
 was not interested in treating 
the
 encounter as a traffic stop.  Although 
the
 initial stop was justified as a violation of 
our
 vehicle code, 
the
 request to search 
the
 car violated 
defendant
's
 fourth amendment rights.  The question to search not only prolonged any legitimate detention of 
the
 car to investigate a traffic violation, but also changed 
the
 fundamental nature of 
the
 stop to a search for a violation of 
our
 criminal code.  Wiencek
's interest in searching 
the
 car, and his conversation with 
defendant
 about being in a gang-related neighborhood, showed that 
his
 intent 
was to conduct a criminal investigation.  In addition, 
the
 fact that 
Wiencek
 waited until he arrived at 
the
 police station to write 
the
 traffic citation suggests that 
the
 initial justification for 
the
 stop was mere pretense.

 For 
the
 foregoing reasons, the judgment of the circuit court of Kane County is affirmed.

Affirmed.

HUTCHINSON, P.J., and GILLERAN JOHNSON, J., concur.