THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. DENNIS SIMAC, Defendant-Appellee.

Third District   No. 3—00—0591

Opinion filed May 7, 2001.

Kevin W. Lyons, State's Attorney, of Peoria (John X. Breslin and Richard T. Leonard, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Rodney R. Nordstrom, of Peoria, for appellee.

JUSTICE HOLDRIDGE delivered the opinion of the court:

The defendant, Dennis Simac, was arrested for possession of drug paraphernalia (720 ILCS 600/3.5(a) (West 2000)), possession of cannabis (720 ILCS 550/4(b) (West 2000)) and possession of cocaine (720 ILCS 570/402(c) (West 2000)). He filed a motion *in limine* to quash his arrest and suppress evidence, alleging that his arrest was illegal. The trial court granted the defendant's motion, and the State appealed.

At around 4 p.m. on January 1, 2000, the Peoria police department received a 9-1-1 call from someone named Brenda, who identified herself as a cashier at the Butternut thrift store. She told the 9-1-1 operator that there was a middle-aged white man driving a small red car with license plate number 299372 near the store. She was

concerned because he had circled the block several times. She stated she did not know if he was looking for someone or something or if he was checking out the store.

Officer Lenover of the Peoria police department responded to the call. He testified that as he approached the store, a car matching the description he had received from the dispatcher pulled up next to him. He activated his lights and pulled the car over. He identified the defendant as the driver of the vehicle. He stated that as he was pulling the driver over, the driver appeared to be making some "furtive" movements.

The officer stated that when he approached the car, he had to knock on the window to get the driver's attention. The driver continued to make odd movements toward the passenger seat. The officer asked the driver to get out of the car and stand on the sidewalk so that the officer could explain why he had pulled the defendant over. He had to ask the defendant several times to stand on the sidewalk before he complied.

While the defendant was standing on the sidewalk, the defendant put his hand in his coat pocket and pulled out a silver tube. The officer grabbed the defendant's hand, but the defendant put the item into his back pants pocket. The officer noticed the tube sticking out of the defendant's pants pocket. He recognized it as a crack pipe. He then handcuffed the defendant and arrested him for possession of drug paraphernalia. Subsequent to the arrest, he searched the defendant and found cocaine. He also searched the defendant's car and found marijuana.

Ultimately, the judge found that although the police officer was justified in stopping the defendant under his community caretaking function, he did not have authority to order the defendant out of the car as part of this function. He found the seizure of the defendant was illegal, quashed the arrest, and suppressed the evidence. The State filed a motion to reconsider, which was denied, and the State appealed.

The ruling of a trial court on a motion to suppress frequently presents mixed questions of fact and of law. Because the trier of fact is in the best position to review the evidence and weigh the credibility of the witness, the findings of fact of the trial court will not be disturbed unless they are manifestly erroneous. *People v. Miller*, 173 Ill. 2d 167, 670 N.E.2d 721 (1996). However, on questions of law, the finding of the trial court is subject to *de novo* review. *People v. Aguilar*, 265 Ill. App. 3d 105, 637 N.E.2d 1221 (1994).

■ Encounters between private citizens and the police can be divided into three broad categories: (1) arrest, in which an officer has probable cause, seizes an individual and takes him into custody; (2)

*Terry* stop, in which an officer has a reasonable suspicion that an individual has been involved in criminal activity or is about to commit a crime and detains him briefly for questioning; and (3) "community caretaking," in which an officer stops an individual to check on his well-being, without any initial thought of criminal activity. *People v. Murray*, 137 Ill. 2d 382, 560 N.E.2d 309 (1990). The "community caretaking" function must be completely divorced from any initial suspicion of criminal activity. *People v. Hinton*, 249 Ill. App. 3d 713, 619 N.E.2d 198 (1993). Additionally, it is axiomatic that when an individual is stopped by an officer for community caretaking, that individual has no obligation to submit to any police detention or questioning. *Florida v. Bostick*, 501 U.S. 429, 115 L. Ed. 2d 389, 111 S. Ct. 2382 (1991).

■ If, while performing community caretaking, an officer uses a show of authority to make an individual stay and answer questions, the interaction may be transformed into a seizure. *City of Highland Park v. Lee*, 291 Ill. App. 3d 48, 683 N.E.2d 962 (1997). Whether an officer has made a show of authority is a question of fact and depends on the circumstances. *People v. Lockett*, 311 Ill. App. 3d 661, 725 N.E.2d 27 (2000). A police officer's use of emergency lights to curb a vehicle has been held to be such a show of authority. *Lee*, 291 Ill. App. 3d 48, 683 N.E.2d 962. In determining whether an encounter with a police officer rises to the level of a *Terry* stop, the question is whether, under the circumstances, a reasonable person would feel free to walk away from the police officer. *People v. Bailey*, 314 Ill. App. 3d 1059, 733 N.E.2d 891 (2000).

■ In order for a *Terry* stop to be legal, the officer must have a reasonable, articulable suspicion that the person has committed or is about to commit a crime. *People v. Lockhart*, 311 Ill. App. 3d 358, 724 N.E.2d 540 (2000). A mere hunch is insufficient to support a *Terry* stop. *People v. Stewart*, 242 Ill. App. 3d 599, 610 N.E.2d 197 (1993). Merely being nervous when a police officer approaches is not a sufficient basis for probable cause. *Stewart*, 242 Ill. App. 3d 599, 610 N.E.2d 197.

■ In delivering his opinion, the judge stated that the officer could lawfully approach the vehicle to see if the driver needed assistance, but that asking the defendant to step out of the car exceeded the permissible scope of community caretaking. Implicit in this statement is a finding of fact that the officer exerted his authority to the point that no reasonable person would have felt free to leave. We believe that the police officer's use of his emergency lights, coupled with his repeatedly asking the defendant to step onto the sidewalk to discuss why he had been pulled over, was a sufficient show of authority to

transform the encounter from a community caretaking function into a *Terry* stop. This finding of fact by the trial court was not manifestly erroneous.

Furthermore, the police officer's testimony belies the contention that this was a community caretaking stop at all. The officer testified that he pulled the defendant over and asked the defendant to get out of the car because he believed the defendant might be casing the Butternut thrift store. The only basis for the officer's belief was the 9-1-1 call, coupled with the nervousness of the defendant when the officer approached the car. This officer had merely a hunch, not the reasonable suspicion necessary required for a proper *Terry* stop.

Since there was not a sufficient basis for the *Terry* stop, the defendant's subsequent arrest and the evidence that resulted from his arrest were obtained illegally and were properly suppressed.

For the foregoing reasons, the judgment of the circuit court of Peoria County is affirmed.

Affirmed.

SLATER and LYTTON, JJ., concur.