(text box: 1)
 NO. 5-02-0725

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

___________________________________________________________________________

THE PEOPLE OF THE STATE OF ILLINOIS, )  Appeal from the

)  Circuit Court of

     Plaintiff-Appellee, )  Richland County.

)

v. )  No. 99-CF-33 

)

THOMAS B. LEIGH, )  Honorable

)  Robert M. Hopkins,

     Defendant-Appellant. )  Judge, presiding.  

___________________________________________________________________________

JUSTICE CHAPMAN delivered the opinion of the court:

In March 2001, a jury convicted the defendant, Thomas Bradley Leigh, of unlawful possession of a firearm by a felon (720 ILCS 5/24-1.1(a) (West 1998)).  The charge stemmed from a routine traffic stop, during which officer Dennis Hout asked the defendant if there was anything in his pickup truck that would cause a police dog to alert and the defendant responded that a pistol belonging to his wife, Traci Leigh, was in the truck.  The defendant appeals, arguing that the trial court erred in denying his motion to suppress, because Officer Hout's question impermissibly expanded the scope of the stop.  We reverse the trial court's order denying the motion to suppress and reverse the defendant's conviction.

I. BACKGROUND

On May 23, 1999, at approximately 9:25 in the evening, the defendant was driving to the store with his wife, Traci, to purchase some milk.  Officer Hout observed that the defendant's pickup truck had no rear license plate illumination light, and he pulled the defendant over.  He was acquainted with both the defendant and Traci.  Officer Hout asked the defendant for his driver's license, registration, and proof of insurance, and he returned to his squad car to run the driver's license through the dispatch computer.  He also ran a criminal check on the defendant.  The defendant and Traci remained in the truck while he was doing this.  Officer Hout discovered that the defendant's driver's license was valid and that the defendant had a prior conviction for criminal damage to property dating from 1984. 

Officer Hout asked the defendant to sit in the passenger's seat of his squad car, which the defendant did.  As Officer Hout finished writing the defendant a warning ticket for the failure to illuminate his registration (625 ILCS 5/12-201(c) (West 1998)), he asked the defendant if there was anything in the truck that would cause a police dog to alert were he to call a canine unit to the scene.  According to Officer Hout's testimony, the defendant responded that nothing in the truck that he was aware of would cause the dog to alert.  Officer Hout stated, "You don't sound too sure of yourself."  The defendant then said that his wife's pistol was in the truck.  The defendant's version of the confrontation was slightly different.  He testified as follows: 

"And then he questioned me, ['][I]s there anything in the car that a dog can–the dog would hit on[?][']  And I said[,] ['][N]ot to my knowledge.[']  I said[:] ['][T]he only thing I know of in there is my wife's got her little gun with her.  That's all I know of.[']  He said, ['][W]ell, you don't sound too sure of yourself.[']  Well, how much more sure can you get?"

It is undisputed that Traci Leigh was lawfully entitled to carry the pistol.  Both she and the defendant testified that she carried it for protection from her physically abusive first husband.  Both also testified that the defendant was not aware that Traci had brought the gun with her until they were at least halfway into town to go to the store.

Officer Hout told the defendant to remain in the squad car while he approached the passenger's side of the pickup truck to obtain the pistol from Traci.  He also called for backup at this point.  The pistol, which was not loaded, was inside its holster under a jacket on the seat next to Traci's left side.  Traci handed the pistol, in its holster, to Officer Hout.  She also gave him a clip of ammunition, which had been on the floorboard on her side of the truck.  Officer Hout then placed the defendant under arrest. 

The following day, the State charged the defendant by information with unlawful possession of a weapon by a felon.  On August 26, 1999, the defendant filed a motion to suppress, contending that Officer Hout impermissibly exceeded the scope of the initial stop, in violation of the fourth amendment.  The trial court denied the motion.  

On March 12 and 13, 2001, the court held the trial in this matter.  The jury found the defendant guilty, and the court entered a conviction.  This appeal followed.  We note that the defendant raises additional issues related to the sufficiency of the evidence and the propriety of the jury instructions.  Because of our conclusion that the evidence against him must be suppressed, we do not address these further contentions.

II. ANALYSIS

The defendant argues that Officer Hout's questions about the contents of his truck were neither related to the original purpose of the stop nor supported by an additional reasonable, articulable suspicion of criminal activity and that, therefore, Officer Hout violated the fourth amendment by asking them.  The State contends that no fourth amendment violation occurred because (1) Officer Hout's questions did not extend the duration of the stop and (2) Officer Hout did not impose additional restrictions on the defendant's movement.  Our decision is controlled by the recent Illinois Supreme Court decision in 
People v. Gonzalez
, No. 92305 (April 17, 2003).  We conclude that the questioning impermissibly expanded the scope of the traffic stop. 

The fourth amendment protects citizens from unreasonable searches and seizures.  U.S. Const., amend. IV.  Routine traffic stops, such as the one at issue in the case at bar, are "seizures" within the meaning of the fourth amendment.  
Gonzalez
, slip op. at 4.  Because of their brevity, traffic stops are analyzed within the framework of 
Terry v. Ohio
, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968), which involves a two-part inquiry: (1) the stop must be justified at its inception and (2) it must be reasonably related in scope to the circumstances that justified the stop in the first place.  
Gonzalez
, slip op. at 7 (relying on 
Terry
, 392 U.S. at 19-20, 20 L. Ed. 2d at 905, 88 S. Ct. at 1879).  The State bears the burden of demonstrating that the stop was "sufficiently limited in scope and duration to satisfy" these conditions.  
People v. Cox
, 202 Ill. 2d 462, 467, 782 N.E.2d 275, 279 (2002).  Where these guidelines are not met, evidence obtained as a result must be suppressed.  See 
United States v. Green
, 111 F.3d 515, 520-21 (7th Cir. 1997) (discussing the application of the exclusionary rule in the context of a traffic stop).  A motion to suppress evidence generally presents a mixed question of law and fact.  
Cox
, 202 Ill. 2d at 465-66, 782 N.E.2d at 278.  We accord great deference to the trial court's findings of fact; however, we review 
de novo
 the trial court's ultimate determination to grant or deny the motion.  
Cox
, 202 Ill. 2d at 466, 782 N.E.2d at 278.

There is no dispute that Officer Hout acted properly in stopping the defendant's truck initially.  The only issue before us is whether his questioning the defendant about the contents of the truck exceeded the permissible scope of the stop, thereby rendering any evidence obtained as a result subject to suppression.  We find that it did.

Both Illinois courts and federal courts have split on the meaning of the scope limitation in 
Terry
.  Some courts have held that the "scope" of the detention refers only to its duration because questioning is not itself a seizure.  
Gonzalez
, slip op. at 8 (citing 
United States v. Shabazz
, 993 F.2d 431, 436 (5th Cir. 1993)); see also 
People v. Smith
, 266 Ill. App. 3d 362, 366-67, 640 N.E.2d 647, 649-50 (1994).  Others, meanwhile, have held that the scope limitation includes " 'both the length of the detention and the manner in which it is carried out.' "  (Emphasis omitted.)  
Gonzalez
, slip op. at 9 (quoting 
United States v. Holt
, 264 F.3d 1215, 1230 (10th Cir. 2001)); see also 
People v. White
, 331 Ill. App. 3d 22, 34, 770 N.E.2d 261, 271 (2002) ("Scope and duration are two different dimensions of the 
Terry
 analysis.").  Those courts that have concluded that the scope requirement includes both a duration component and a manner component have generally held that questions that are neither directly related to the initial reason for the stop nor supported by an additional reasonable, articulable suspicion improperly broaden the scope of the stop.  See, 
e.g
., 
White
, 331 Ill. App. 3d at 34, 770 N.E.2d at 271; 
United States v. Murillo
, 255 F.3d 1169, 1174 (9th Cir. 2001); see also 
Holt
, 264 F.3d at 1229 (rejecting the 
Shabazz
 court's holding that police questioning "on matters unrelated to the purpose of the detention" does not expand the scope). 

While the instant appeal was pending, the Illinois Supreme Court resolved this conflict in 
Gonzalez
.  The court rejected both approaches, finding that neither "strikes the proper balance between the government's interest in effective law enforcement and the individual's interest in being free from arbitrary governmental intrusions, which lies at the core of the concept of 'reasonableness.' "  
Gonzalez
, slip op. at 10.  The court annunciated the following principles for analyzing the scope requirement:

"If the question is reasonably related to the purpose of the stop, no fourth amendment violation occurs.  If the question is not reasonably related to the purpose of the stop, we must consider whether the law enforcement officer had a reasonable, articulable suspicion that would justify the question.  If the question is so justified, no fourth amendment violation occurs.  In the absence of a reasonable connection to the purpose of the stop or a reasonable, articulable suspicion, we must consider whether, in light of all the circumstances and common sense, the question impermissibly prolonged the detention 
or changed the fundamental nature of the stop
."  (Emphasis added.)  
Gonzalez
, slip op. at 12-13.

We believe that Officer Hout's questioning changed the fundamental nature of the stop.  Essentially, what began as a routine traffic stop for the purpose of issuing a warning ticket became an all-encompassing investigation.  

A comparison with the questioning alleged to exceed the scope of the initially valid traffic stop at issue in 
Gonzalez
 illustrates the point.  There, the defendant was a passenger in a car that had been stopped by two police officers because it did not have a front license plate.  One officer asked Gonzalez for his identification.  He offered a traffic ticket in lieu of other identification.  During the ensuing encounter, the officer discovered that the defendant had cocaine on his person.  
Gonzalez
, slip op. at 1.  

Following the above-described analysis, the court first noted that the request for a passenger's identification was not related to the purpose of the stop, nor was it supported by a reasonable, articulable suspicion that the passenger had committed any crime.  
Gonzalez
, slip op. at 13.  Here, too, Officer Hout's questioning regarding the contents of the defendant's truck was unrelated to the purpose of the stop and was not based on any reasonable, articulable suspicion.  The 
Gonzalez
 court then noted that the request for identification did not extend the duration of the stop impermissibly.  
Gonzalez
, slip op. at 13.  The questioning involved in the case at bar did not extend the duration of the detention here, either.

In finding that the request for identification from the passenger had not changed the fundamental nature of the initial stop, the supreme court noted, "A simple request for identification is facially innocuous.  It does not suggest official interrogation and is not the type of question or request that would increase the confrontational nature of the encounter."  
Gonzalez
, slip op. at 13.  Here, by contrast, Officer Hout asked the defendant whether anything at all in his truck would cause a police dog to alert.  The implicit threat to call a canine unit and the statement, "You don't sound too sure of yourself," 
each
 increased the confrontational nature of the stop.  Moreover, asking if anything at all was in the car that might cause a dog to alert expanded the scope of the investigation itself well beyond the purpose of the stop.  Indeed, the questioning amounted to a fishing expedition in the absence of any basis to suspect a crime had been or was being committed.  As the supreme court stated in 
Gonzalez
, "[W]e do not believe that unfettered police questioning of drivers and passengers can be justified by relying on the principle that ' "mere police questioning does not constitute a seizure." '  [Citation.]"  
Gonzalez
, slip op. at 11.  Thus, we conclude that the questioning exceeded the permissible scope of the detention and that the trial court erred in denying the defendant's motion to suppress.

III. CONCLUSION

For the foregoing reasons, we reverse the order of the trial court denying the defendant's motion to suppress.  Because the State cannot prevail on remand without the suppressed evidence, we reverse his conviction and need not remand for further proceedings.  See 
People v. Avant
, 331 Ill. App. 3d 144, 154, 771 N.E.2d 420, 429 (2001); 
People v. Fondia
, 317 Ill. App. 3d 966, 972-73, 740 N.E.2d 839, 844 (2000).

Reversed.

HOPKINS, P.J., and WELCH, J., concur.

COMMENTS AND ANNOTATIONS
Text Box 1:

TEXT BOXES
NOTICE

Decision filed 06/26/03.  The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.