No. 3--03--0119

_________________________________________________________________

 IN THE

 

 APPELLATE COURT OF ILLINOIS

 

 THIRD DISTRICT

 A.D., 2004 

THE PEOPLE OF THE STATE ) Appeal from the Circuit Court

OF ILLINOIS, ) of the 12th Judicial Circuit,

 ) Will County, Illinois,

Plaintiff-Appellee, ) 

 )

v. ) No. 02--CF--1573

 ) 

KENNETH K. JONES, ) Honorable                      

 ) Richard Schoenstedt,

Defendant-Appellant. ) Judge, Presiding.

_________________________________________________________________

PRESIDING JUSTICE HOLDRIDGE delivered the Opinion of the court:

_________________________________________________________________

The defendant, Kenneth K. Jones, was convicted of aggravated unlawful use of a weapon (720 ILCS 5/24--1.6(a)(3) (West 2002)).  He was subsequently sentenced to 24 months' probation.  On appeal, the defendant contends that the trial court erred in denying his motion to suppress.  We agree.

I.  FACTS

At the suppression hearing, University Park Police Officer Todd Tomany testified that he was on a routine patrol in Will County at approximately 1:55 a.m. on January 31, 2003.  Tomany was traveling on Western Avenue when he observed the defendant's vehicle pass by in the opposite direction.  The defendant was traveling on the shoulder of the road.  Tomany then turned around to pursue the defendant for this traffic violation.  By the time Tomany had caught up, the defendant had made a right turn onto Loves Lane.  As Tomany followed the defendant, the defendant appeared to be traveling "well over" the 35 mile-per-hour speed limit.  After the officer activated his squad lights, the defendant continued on for approximately one-quarter mile before pulling over.

Tomany exited his squad car and approached the vehicle.  As he did so, he observed the defendant (the sole occupant of the vehicle) reach toward the passenger side of the vehicle.  The officer immediately questioned the defendant about this movement.  The defendant indicated that he had been retrieving his insurance information.  That information was in his hand, and the defendant offered the insurance information and his license to Tomany.  Tomany asked who owned the vehicle, and the defendant indicated that it was his uncle's.  The officer returned to his squad car to inquire into the status of the defendant's license. 

After this check revealed the license to be valid, the officer returned to the vehicle and asked the defendant to step outside.  The officer testified that at this point he intended to issue a citation for improper lane usage, but he had not yet done so.  He believed the investigation of the traffic stop was not complete because "there was some suspicion on why he was driving on the shoulder, why he was traveling at such a high rate of speed, why he was reaching towards [sic] the passenger side, why the vehicle wasn't registered to him."

After the defendant stepped outside, the officer asked if there were any drugs or weapons in the car.  The defendant responded, "I don't know.  It's not my vehicle."  Tomany then asked for consent to search the vehicle, and the defendant gave verbal consent.  The defendant declined to sign a written consent form because it was not his vehicle.  A second police officer, Officer Stroud, watched the defendant while Tomany searched the vehicle.  It was during this search that a loaded, uncased, semi-automatic handgun was found under the passenger seat.  After this discovery, Tomany placed the defendant under arrest.

At trial, the judge denied the defendant's motion to suppress.  The trial judge found that Tomany had a reasonable, articulable suspicion of unlawful activity to ask the questions he did and to seek consent for a search of the vehicle.  This appeal followed.

II.  ISSUES AND ANALYSIS

On appeal, the defendant argues that the search of the vehicle in this case violated his federal and state constitutional rights against unreasonable searches and seizures.

The ruling of a trial court on a motion to suppress evidence frequently presents mixed questions of fact and of law.  
Because the trier of fact is in the best position to review the evidence and weigh the credibility of the witnesses, the findings of fact of the trial court will not be disturbed unless they are manifestly erroneous.  
People v. Simac
, 321 Ill. App. 3d 1001, 748 N.E.2d 798 (2001).
  However, on questions of law, the finding of the trial court is subject to 
de
 
novo
 review.  
Simac
, 321 Ill. App. 3d 1001, 748 N.E.2d 798
.

The fourth amendment of the United States Constitution guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  U.S. Const., amend. IV.  
Likewise, article I, section 6, of the Illinois state constitution provides similar protections.  Ill. Const. 1970, art. I, §6.  Illinois courts have interpreted the search and seizure language found in section 6 in a manner consistent with the Supreme Court's fourth amendment decisions.  
Fink v. Ryan
, 174 Ill. 2d 302, 673 N.E.2d 281 (1996).
  These constitutional provisions apply to all seizures of the person, including those of only a brief detention short of an arrest.  
United States v. Brignoni-Ponce
, 422 U.S. 873, 45 L. Ed. 2d 607, 95 S. Ct. 2574 (1975).  Routine traffic stops fall within that category.  
People v. Gonzalez
, 204 Ill. 2d 220, 789 N.E.2d 260 (2003).  

Based on their brevity, traffic stops are analyzed by applying the rule set forth in 
Terry v. Ohio
, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868
 (1968).  Under 
Terry
, a police officer may briefly detain a person for questioning if the officer reasonably believes that the person has committed, or is about to commit, a crime.  The reasonableness of the officer's actions involves a two-part inquiry:  (1) whether the stop was justified at its inception; and (2) whether it was reasonably related in scope to the circumstances which justified the interference in the first place.  
Gonzalez
, 204 Ill. 2d 220, 789 N.E.2d 260 (citing 
Terry
, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868)
.

In 
Gonzalez
, the Illinois Supreme Court developed a three-tiered test for determining whether police questioning during a traffic stop satisfies the 
Terry
 scope requirement.  First, no fourth amendment violation occurs if the question is reasonably related to the purpose of the stop.  However, if the question is not reasonably related, we must then consider whether the officer had a reasonable, articulable suspicion that would justify the question.  If he had a reasonable, articulable suspicion, no constitutional violation occurred.  If he did not, we must next determine whether the inquiry impermissibly prolonged the detention or changed the nature of the stop.  If the inquiry did, the officer's actions violated the defendant's fourth amendment rights.  If the inquiry did not, no fourth amendment violation occurred.
  
Gonzalez
, 204 Ill. 2d 220, 789 N.E.2d 260. 

In sum, the law enforcement officer's actions must remain reasonable throughout the duration of the stop.  Once those actions are no longer reasonable, "an illegal seizure has occurred, [and] that illegality may infect and taint the fruits that subsequently resulted."  
People v. Brownlee
, 186 Ill. 2d 501, 518, 713 N.E.2d 556, 565 (1999) (citing 
Wong Sun v. United States
, 371 U.S. 471, 9 L. Ed. 2d 441, 83 S. Ct. 407
 (1963)).

It is clear that the first prong of 
Terry
 is not at issue in this case.  Officer Tomany observed the defendant operating his vehicle on the shoulder of Western Avenue in violation of the Illinois Vehicle Code.  625 ILCS 5/11--709.1(a) (West 2002).  This observation provided Officer Tomany with sufficient probable cause to justify the stop of the defendant at its inception.  
Gonzalez
, 204 Ill. 2d 220, 789 N.E.2d 260.  Thus, this case must be resolved by an analysis of the second prong of 
Terry
, which concerns whether the scope of the initial stop was exceeded. 

The first question under the three-tiered approach outlined in 
Gonzalez
 is 
whether the officer's questioning of the defendant and his request to search the vehicle were reasonably related in scope to the circumstances which justified the stop in the first place.  It is clear that they were not. 

Officer Tomany stopped the defendant because he committed a traffic violation.  After Tomany determined that the defendant's license was valid and that the vehicle was insured, the defendant was questioned about the presence of firearms or narcotics in the vehicle.  The vehicle was also searched at this time.  It is clear that these questions and actions were not at all related to a traffic violation, the initial purpose of the stop.  Indeed, the State specifically concedes this point in its brief.  Therefore, we now turn to the second question under 
Gonzalez
; 
i.e.
, whether the law enforcement officer had a reasonable, articulable suspicion of criminal activity that would justify the further questioning and detention of the defendant.  It is again clear that he did not.

At the time Tomany returned from his squad car, he knew who owned the vehicle, knew it was insured and knew that the defendant's license was valid.  The defendant's movement inside the vehicle had been more than adequately explained as a successful attempt to retrieve insurance information.  The only other reasons for suspicion offered by Tomany were the fact that the defendant had traveled on the shoulder and that he may have exceeded the speed limit.  These facts did not amount to the kind of reasonable, articulable suspicion of criminal activity that would warrant a further inquiry having no relationship to the initial justification for the stop.  There was simply no reason for Tomany to return to the vehicle with questions about guns or drugs instead of a completed traffic citation and the defendant's documentation.  See 
People v. Ortiz
, 317 Ill. App. 3d 212, 738 N.E.2d 1011 (2000) (if no further reasonable suspicion exists, stop should end and defendant should no longer be detained); 
People v. Koutsakis
, 272 Ill. App. 3d 159, 649 N.E.2d 605 (1995) (same).

Having determined that Tomany lacked a reasonable, articulable suspicion to warrant further questioning, we must consider the third question outlined in 
Gonzalez
:
 whether, in light of all the circumstances and common sense, the officer's actions impermissibly prolonged the detention or changed the fundamental nature of the stop.  We conclude that they did.

After returning to the vehicle, Tomany first asked if there were any weapons or drugs in the vehicle.  Then he asked for consent to search the vehicle for those items.  We reiterate that these actions occurred 
after
 what should have been the termination of this traffic stop.  Additionally, asking about weapons or drugs and seeking permission for a search each increased the confrontational nature of the stop.  
Gonzalez
, 204 Ill. 2d 220, 789 N.E.2d 260.  The questions also changed the focus of the interaction from a traffic stop to an open-ended interrogation seeking incriminating evidence.  See generally 
People v. Miles
, 343 Ill. App. 3d 1026, 798 N.E.2d 1279 (2003); 
People v. Leigh
, 341 Ill. App. 3d 492, 792 N.E.2d 809 (2003).  

We therefore find that the officer's actions in this case both prolonged the detention 
and
 changed the fundamental nature of the stop.  Therefore, the defendant was illegally detained at the time he gave consent to the search.  That consent and the resulting search were both tainted, and the fruits thereof should have been suppressed.  
Brownlee
, 186 Ill. 2d 501, 713 N.E.2d 556 (citing 
Wong Sun
, 371 U.S. 471, 9 L. Ed. 2d 441, 83 S. Ct. 407
). 

III.  CONCLUSION

For the reasons stated, the ruling of the circuit court of Will County denying the defendant's motion to suppress is reversed.  Moreover, because the State will be unable to proceed against the defendant without the suppressed evidence, we reverse his conviction outright.  
People v. Smith
, 331 Ill. App. 3d 1049, 780 N.E.2d 707 (2002). 

Reversed.

LYTTON and BARRY, JJ., concur.