No. 3--02--0569

_____

Filed April 19, 2007.

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2007

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 9th Judicial Circuit, McDonough County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 01--CM--285 |
| RUSSELL E. ANDREWS, | ) ) | Honorable Richard H. Gambrell, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

PRESIDING JUSTICE LYTTON delivered the OPINION of the court:
_____


The defendant, Russell E. Andrews, was charged with unlawful possession of cannabis (720 ILCS 550--4(b) (West 2000)).  His motion to suppress the evidence was denied.  Following a stipulated bench trial, the court found him guilty and sentenced him to, among other things, one year of conditional discharge and 60 days in the county jail.  His motion for a new trial was also denied.  On appeal, the defendant argues that the trial court erred by denying his motion to suppress.

On September, 27, 2006, the Illinois Supreme Court entered a supervisory order instructing us to vacate our judgment and reconsider this case in light of Illinois v. Caballes, 543 U.S. 405

(2005), and People v. Caballes, 221 Ill. 2d 282 (2006). We now reverse the defendant's conviction.

BACKGROUND

On April 28, 2001, the defendant was the only passenger in his son's pickup truck in Macomb. His son was driving. At the suppression hearing, Officer Jason York testified that he stopped the vehicle for a traffic violation. Although he did not remember the specific traffic violation, he stated that it could have been a vehicle tag violation. York said that as he approached the vehicle, he recognized the defendant and the defendant's son.

York asked the driver for his driver's license, which the driver gave to him. York did not recall whether he also requested identification from the defendant. The defendant, however, testified that York requested identification from him. The defendant said that he gave York a valid Illinois state identification card.

York then returned to the squad car and ran background checks on the defendant and his son. The officer stated that he would have run a background check on the defendant regardless of whether he had the defendant's identification because he knew the defendant's name. The background check on the defendant showed an active body attachment. York arrested the defendant based on the body attachment and conducted a search of the defendant's person incident to that arrest. During the search, York found cannabis on

2

the defendant's person.  York then also arrested the defendant for possession of cannabis.

At the conclusion of the suppression hearing, the trial judge found that York had asked the defendant for his identification. The trial judge stated that, regardless of whether York obtained the defendant's identification, it was inevitable that York would have run a background check on the defendant because York knew the defendant's name.  The court, therefore, denied the motion to suppress.

Following the trial, the defendant was found guilty and was sentenced as indicated above.  Defendant filed a motion for a new trial, arguing that the court erred by denying his motion to suppress.  The court denied the motion, and the defendant appealed.

ANALYSIS

The ruling of a trial court on a motion to suppress frequently presents mixed questions of fact and law.  People v. Simac, 321 Ill. App. 3d 1001 (2001).  The trial court's findings of fact will not be disturbed unless they are manifestly erroneous.  Simac, 321 Ill. App. 3d 1001.  Concerning questions of law, the ruling of the trial court is subject to de novo review.  Simac, 321 Ill. App. 3d 1001.

Under the fourth and fourteenth amendments to the Constitution of the United States, a person has a right to be secure against unreasonable searches and seizures.  U.S. Const., amend. IV, XIV.

3

In Delaware v. Prouse, 440 U.S. 648 (1979), the United States Supreme Court stated that a traffic stop is a seizure which is subject to the fourth amendment's reasonableness standards. The temporary detention of individuals, passengers and drivers alike, during a vehicle stop constitutes a seizure of persons within the meaning of the fourth amendment. People v. Gonzalez, 204 Ill. 2d 220 (2003). Because a traffic stop is more analogous to a Terry investigative stop (see Terry v. Ohio, 392 U.S. 1 (1968)) than to a formal arrest, the reasonableness of a traffic stop is analyzed under Terry principles. Gonzalez, 204 Ill. 2d at 226. A Terry analysis involves a dual inquiry: (1) whether the officer's action was justified at its inception, and (2) whether it was reasonably related in scope to the circumstances which justified the interference in the first place. Gonzalez, 204 Ill. 2d at 228.

In Gonzalez, the Illinois Supreme Court set out an analytical framework for courts to use in determining whether police questioning during a traffic stop seizure is consistent with fourth amendment protections. If the question is reasonably related to the initial purpose of the stop, no fourth amendment violation occurs. If the question is not, we must consider whether the law enforcement officer had a reasonable, articulable suspicion that would justify the question. In the absence of a reasonable connection to the purpose of the stop or a reasonable, articulable suspicion, we must consider whether, in light of all the

4

circumstances and common sense, the question impermissibly prolonged the detention or changed the fundamental nature of the stop. Gonzalez, 204 Ill. 2d at 235.

In this case, no issue exists concerning the lawfulness of the initial stop. Rather, this appeal concerns the lawfulness of the officer's conduct following the initial stop. Officer York's initial questioning of the driver and request for identification was justified. Those queries were reasonably related to the initial purpose of the encounter; the investigation of a traffic violation. However, the background check of defendant was not related to the initial justification for the stop. Defendant was simply a passenger in the truck and was not implicated in the traffic violation. Further, the background check was not supported by any reasonable, articulable suspicion that defendant had committed or was about to commit a crime. Officer York neither saw nor suspected that defendant had committed any wrongdoing.

In the absence of a reasonable articulable suspicion, we must consider whether the check impermissibly prolonged the detention or changed the fundamental nature of the stop. The record does not resolve clearly how long the background check prolonged the detention. York testified that he returned to the squad car and ran a background check on both defendant and his son at the same time. York did not testify that the check performed on defendant was completed before the check on the driver. The background check

5

on defendant could well have lengthened the duration of the detention if the officer had to wait for the results of the check.

Regardless of the duration of any extended detention, however, the background check was impermissible because it changed the fundamental nature of the traffic stop. The check converted the stop from a routine traffic stop into an inquiry into defendant's past misconduct. People v. Miles, 343 Ill. App. 3d 1026 (2003) (officers impermissibly prolonged stop and increased confrontational nature because questions asked of passenger were not related to purpose of the stop). People v. Jones, 346 Ill. App. 3d 1101 (2004).

We note that our conclusion is consistent with the United State Supreme Court's decision in Illinois v. Caballes, 543 U.S. 405 (2005), and the Illinois supreme court's revised opinion in People v. Caballes, 221 Ill. 2d 282 (2006). Our case does not involve a dog sniff, nor was the decision based on any analysis of the issues under the Illinois constitution. The cases are further distinguished because Caballes was the driver of the speeding car while defendant was a passenger in a car whose driver was stopped for a "vehicle tag violation," and, in Caballes, there was no claim of improper extension of the time or scope of the original stop.

The State claims that even if the officer's conduct violated defendant's constitutional right, the trial court properly denied

defendant's motion to suppress the evidence and quash the arrest by applying the doctrine of inevitable discovery.

Under the inevitable discovery doctrine, evidence obtained by an officer in violation of a defendant's constitutional rights, which otherwise would be inadmissible, may be admitted if the prosecution can show that the evidence inevitably would have been discovered without reference to the officer's error.  Nix v. Williams, 467 U.S. 431 (1984); People v. Edwards, 144 Ill. 2d 108 (1991).

Here, there was nothing inevitable about defendant's arrest for cannabis.  Officer York never articulated a reasonable suspicion that defendant had committed or was about to commit a crime.  Knowing someone's name does not qualify as a reasonable articulable suspicion.  The request for identification and background check of the defendant, a passenger, was impermissible under Gonzalez, no matter how the officer got his name.  Thus, the defendant's seizure was unreasonable.

The trial court erred as a matter of law when it denied the defendant's motion to suppress.  Accordingly, we must reverse the defendant's conviction for cannabis possession.

The order of circuit court of McDonough County denying the defendant's motion to suppress the evidence is reversed, and the judgment of conviction is reversed.

Reversed.

HOLDRIDGE, J., concurring.

JUSTICE SCHMIDT, dissenting:

The majority holds that it is impermissible for a police officer to run a warrant check on a passenger during a routine traffic stop absent a reasonable, articulable suspicion of criminal activity. It then professes that its holding comports to *Illinois v. Caballes* and *People v. Caballes*. Slip op. at 6. It does not and, therefore, I dissent.

A little history of this case seems appropriate. The original order of this court, a 2 to 1 majority (*People v. Andrews*, No. 3--02--0569 (2004) (unpublished order under Supreme Court Rule 23)) that came to the same conclusion as does the majority here, was vacated by our supreme court in a supervisory order that directed us to reconsider the case in light of *Illinois v. Caballes* and *People v. Caballes*. *People v. Andrews*, 221 Ill. 2d 644, 853 N.E.2d 1230 (2006).

"By the logic of *Caballes*, checking for warrants on a passenger changes the fundamental nature of the traffic stop only if (1) it causes the seizure to last longer than the time reasonably required for such a traffic stop or (2) it infringes upon the passenger's legitimate interest in privacy." *People v. Roberson*, 367 Ill App. 3d 193, 201, 854 N.E.2d 317, 324 (2006). (*Roberson* contains an excellent analysis of the issues that I will not repeat here.)

8

There is no evidence in the record before us to support an allegation that the warrant search prolonged the duration of this traffic stop. In fact, as the majority acknowledges, there is no evidence in the record before us indicating how long the traffic stop lasted. Any doubts raised by the incompleteness of the record will be resolved against the appellant. *People v. Stewart*, 179 Ill. 2d 556, 689 N.E.2d 1129 (1997).

Since nothing in the record indicates the duration of the stop was expanded by Officer York's actions, our next task should be to determine whether his actions infringed upon defendant's legitimate interest in privacy. If it did not, under *Caballes*, it could not have impermissibly changed the nature of the traffic stop.

Officers have the right to ask citizens questions, even incriminating ones, when the officer has no reasonable, articulable suspicion of criminal activity. *People v. Luedemann*, 222 Ill. 2d 530, 857 N.E.2d 187 (2006). The *Luedemann* court acknowledged the theory that "'police officers can approach individuals as to whom they have no reasonable suspicion and ask them potentially incriminating questions'" is well settled in the law and has been endorsed by the United States Supreme Court "'a number of times.'" *Luedemann*, 222 Ill. 2d at 549, quoting *Florida v. Bostick*, 501 U.S. 429, 439, 115 L. Ed. 2d 389, 401, 111 S. Ct. 2382, 2388 (1991). "[T]he law clearly provides that a police officer does not violate the fourth amendment merely by approaching a person in public to

9

ask questions if the person is willing to listen. *** [T]he police have the right to approach citizens and ask potentially incriminating questions." *Luedemann*, 222 Ill. 2d at 549, citing *Florida v. Bostick*, 501 U.S. 429, 439, 115 L. Ed. 2d 389, 401, 111 S. Ct. 2382, 2388 (1991). Officer York was well within his rights in asking defendant for identification. The majority concedes this point.

"The existence of an arrest warrant is a matter of public record." *Gist v. Macon County Sheriff's Department*, 284 Ill. App. 3d 367, 377, 671 N.E.2d 1154, 1161 (1996). "[T]he expectation 'that certain facts will not come to the attention of the authorities' is not the same as an interest in 'privacy that society is prepared to consider reasonable.'" *Illinois v. Caballes*, 543 U.S. 405, 408-09, 160 L. Ed. 2d 842, 847, 125 S. Ct. 834, 837-38 (2005), quoting *United States v. Jacobsen*, 466 U.S. 109, 122, 80 L. Ed. 2d 85, 100, 104 S. Ct. 1652, 1661 (1984). The defendant had no legitimate privacy interest in the fact that an outstanding writ of attachment for his arrest existed at the time of the traffic stop.

On the other hand, the majority erroneously characterizes Officer York's actions in running a warrant check as converting "the stop from a routine traffic stop into an inquiry into defendant's past misconduct." Slip op. at 5. The language and analysis employed by the majority are strikingly similar to that

10

used in *People v. Harris*, 207 Ill. 2d 515, 802 N.E.2d 219 (2003). The United States Supreme Court has vacated the *Harris* decision and instructed our supreme court to revisit its analysis in light of *Illinois v. Caballes*. *Illinois v. Harris*, 543 U.S. 1135, 161 L. Ed. 2d 94, 125 S. Ct. 1292 (2005).

The fact is, a warrant check is a computer check to determine whether there are any current outstanding warrants or writs for the individual's arrest. Justice Fitzgerald's dissent in *Harris*, joined by Justices Thomas and Garman, recognized this. *People v. Harris*, 207 Ill. 2d at 536 (Fitzgerald, J., dissenting, joined by Thomas and Garman, JJ.). In Illinois, police officers routinely run warrant checks simultaneously through the Law Enforcement Agency Data System (LEADS) and the National Crime Information Center (NCIC). Even 25 years ago, these warrant checks took only moments to complete.

Nothing Officer York did changed the nature of this traffic stop from a constitutionally permissible stop to an unconstitutional stop. It was permissible for the officer to ask defendant questions. It was permissible for the officer to run a warrant check. It was proper for the officer to search the defendant's person once he lawfully arrested defendant pursuant to the outstanding writ.

From a common sense standpoint, to require police to have a reasonable, articulable suspicion of criminal activity to run a

11

warrant check seems somewhat silly. What is the likelihood that police will find a warrant for a crime that a person has just committed or is about to commit? What about the officer who recognizes someone on the street and simply requests a warrant check on the individual without first stopping him? Is that an invasion of the person's constitutional rights to privacy? In the real world, police officers do this every day. It is a practice which leads to many arrests based on outstanding warrants and writs. As long as the warrant check on the passenger does not unreasonably prolong the traffic stop, I can think of no relevant difference between the warrant check at issue here and one where the officer runs a warrant check on someone the officer recognizes standing on the street or passing by in a car. If the law requires a reasonable, articulable suspicion to check public records as the majority holds here today, both are impermissible.

Finally, although I find that no unconstitutional action was taken by Officer York, I feel it necessary to address the "inevitable discovery" issues raised by the State as it appears the majority misconstrues the State's argument. The majority concludes that since "there was nothing inevitable about the defendant's arrest for cannabis," the inevitable discovery doctrine does not cure what the majority incorrectly determined to be an improper search. Slip op. at 6. The State did not argue simply that the arrest for cannabis was inevitable but rather the warrant check was

12

inevitable, given Officer York's familiarity with the defendant. This, in turn, made defendant's arrest based upon the writ inevitable. This was so, even though defendant argued below that the officer's request for his identification was a fourth amendment violation. That is, the State argued that even if the court found the request for identification constitutionally infirm, the officer knew defendant. The trial court made the specific finding that the officer recognized defendant and would have run a warrant check even without securing defendant's identification. The State's "inevitability" argument did not address or anticipate the majority ruling that it was the running of the warrant check, as opposed to requesting identification, where the officer went afoul of the fourth amendment.