# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *People v. Fitzpatrick*, 2011 IL App (2d) 100463

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. LEWIS C. FITZPATRICK, Defendant-Appellant. |
| District & No. | Second District<br>Docket No. 2-10-0463 |
| Filed | November 3, 2011 |
| Held<br><br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The trial court did not err in denying defendant's motion to quash his arrest and suppress the cocaine discovered in a search conducted following his arrest for violating the Vehicle Code by walking in the middle of a public road, notwithstanding defendant's contention that a custodial arrest and a subsequent search for a petty offense violates the state constitution's prohibition against unreasonable searches and seizures, since the United States Supreme Court held in *Atwater* that a custodial arrest for a misdemeanor punishable by a fine only does not violate the federal constitution's prohibition against unreasonable searches and seizures, and pursuant to the lockstep doctrine, the trial court's decision would be affirmed, but the order requiring defendant to pay for the services of a public defender was vacated and the cause was remanded for a hearing on his ability to pay. |
| Decision Under Review | Appeal from the Circuit Court of Lake County, No. 09-CF-2926; the Hon. George Bridges, Judge, presiding. |
| Judgment | Affirmed in part and vacated in part; cause remanded. |

Counsel on
Appeal

Thomas A. Lilien and Barbara R. Paschen, both of State Appellate Defender's Office, of Elgin, for appellant.

Michael J. Waller, State's Attorney, of Waukegan (Lawrence M. Bauer and Mary Beth Burns, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Panel

JUSTICE ZENOFF delivered the judgment of the court, with opinion.
Justices Bowman and Birkett concurred in the judgment and opinion.

**OPINION**

¶ 1    Following a stipulated bench trial in the circuit court of Lake County, defendant, Lewis C. Fitzpatrick, was found guilty of possession of a controlled substance and was sentenced to a three-year prison term. On appeal, defendant argues that the trial court erred in denying his motion to quash his arrest and suppress evidence. He further argues that the trial court erred in ordering him to pay $750 to reimburse the Lake County public defender for services performed before he retained a private attorney. We affirm the denial of the motion to quash and suppress. We vacate the order requiring defendant to reimburse the public defender, and we remand for a hearing to determine defendant's ability to pay for the public defender's services.

¶ 2    Defendant was placed under arrest after a police officer observed him walking in the middle of a public road on July 23, 2009. Section 11-1007 of the Illinois Vehicle Code provides that, where a sidewalk is provided and its use is practicable, a pedestrian may not walk upon the adjacent roadway. 625 ILCS 5/11-1007(a) (West 2008). Where no sidewalk is provided a pedestrian must walk on the shoulder as far as practicable from the edge of the roadway. 625 ILCS 5/11-1007(b) (West 2008). Where neither a sidewalk nor a shoulder is available, a pedestrian must walk as near as practicable to an outside edge of the roadway. 625 ILCS 5/11-1007(c) (West 2008). A violation of section 11-1007 is a petty offense (625 ILCS 5/11-202 (West 2008)).[1] (According to the arresting officer's testimony at the hearing on defendant's motion to quash and suppress, defendant's conduct also violated an unspecified ordinance.) The arresting officer searched defendant's pockets at the scene but found nothing. Defendant was searched again at the police station, and cocaine was discovered in his sock.

---

[1]In his brief, defendant contends that a petty offense is one for which only a fine may be imposed. That was true prior to July 1, 2009, but those committing petty offenses on or after that date may also be sentenced to probation or conditional discharge. 730 ILCS 5/5-1-17, 5-4.5-75 (West 2008).

¶ 3    Defendant argues on appeal that a custodial arrest for a petty offense violates our state constitution's prohibition against unreasonable searches and seizures (Ill. Const. 1970, art. I, § 6). In *Atwater v. City of Lago Vista*, 532 U.S. 318 (2001), the United States Supreme Court held that a custodial arrest for a misdemeanor punishable by a fine only does not run afoul of the United States Constitution's prohibition against unreasonable searches and seizures. At issue in this appeal is whether the corresponding provision of our state constitution should be interpreted the same way. This court has expressed divergent views on the issue.

¶ 4    The constitutionality of a custodial arrest for a petty offense was a tangential issue in *People v. Moorman*, 369 Ill. App. 3d 187 (2006), which was decided by a divided panel of this court. The majority took the view that our supreme court's holdings in two post-*Atwater* cases–*People v. Cox*, 202 Ill. 2d 462 (2002), and *People v. Jones*, 215 Ill. 2d 261 (2005)–were "inconsistent with the central holding of *Atwater*." *Moorman*, 369 Ill. App. 3d at 197. However, in *People v. Taylor*, 388 Ill. App. 3d 169 (2009), a different panel of this court held that our state constitution places no greater limits than does the United States Constitution on a police officer's authority to arrest one who has committed a petty offense.[2]

¶ 5    In *Cox*, a police officer stopped the defendant's vehicle because it did not have a rear registration light. Although there was nothing to indicate that the defendant was involved in any drug-related activity, the officer requested that another officer bring a drug-sniffing dog to the scene. The dog arrived about 15 minutes later and alerted to the presence of drugs. The defendant was frisked and her vehicle was searched. The *Cox* court observed:

"When a police officer observes a driver commit a traffic violation, the officer is justified in briefly detaining the driver to investigate the violation. [Citations.] The officer may perform some initial inquiries, check the driver's license, and conduct a speedy warrant check. [Citations.] If no further suspicion is aroused in the officer following these inquiries, the traffic stop should go no further. [Citations.] The officer should issue a warning ticket or a citation, as appropriate, and allow the driver to leave. [Citation.]" *Cox*, 202 Ill. 2d at 468.

¶ 6    The *Cox* court reasoned that bringing the drug-sniffing dog to the scene unreasonably prolonged the detention. *Id.* at 470. The majority in *Moorman* read the above language as an implicit rejection of *Atwater*. The majority noted that the *Cox* court was aware of *Atwater*, which was discussed in a dissent by Justice Thomas. Justice Thomas lamented that a 15-minute time limit on traffic stops would lead officers to exercise their authority under *Atwater* to take petty offenders into custody, with such an arrest serving as a pretext to search the arrestee's person and vehicle. In *Taylor*, this court found the *Moorman* majority's reasoning unpersuasive because "[t]he mere lack of an explanation in *Cox* as to how its decision was consistent with *Atwater* does not lead to the conclusion that the supreme court

---

[2]Justice Hutchinson agreed with the majority's constitutional analysis. However, because she believed that the defendant's arrest violated a supreme court rule, Justice Hutchinson dissented from the majority's decision to uphold a search incident to the defendant's arrest. *Taylor*, 388 Ill. App. 3d at 180 (Hutchinson, J., dissenting).

found that it was not the law in this state." *Taylor*, 388 Ill. App. 3d at 177. We agree. In *Moorman*, the majority inferred that the *Cox* majority had shrugged off the dissent's concerns without comment because the *Cox* majority concluded that the premise of the dissent's argument–that custodial arrests for petty offenses are permissible in Illinois–was faulty. On the other hand, the *Cox* majority might have agreed with the dissent's understanding of *Atwater*, but might nonetheless have been less troubled than the dissent about the mischief (an epidemic of pretextual arrests) that might ensue as a result of its decision. It is possible only to speculate why the *Cox* majority was unmoved by the dissent's argument.

¶ 7        In *Jones*, our supreme court indicated that, although a police officer had probable cause to stop the defendant for a minor traffic violation, the officer did not have authority to search the defendant or the vehicle. The *Jones* court relied in part on *Knowles v. Iowa*, 525 U.S. 113 (1998), which held that a police officer could not conduct a search after issuing a citation in connection with a routine traffic stop. Citing *Knowles*, the *Jones* court stated, "Stopping an automobile for a minor traffic violation does not, by itself, justify a search of the detainee's person or vehicle. The officer must reasonably believe that he or she is confronting a situation more serious than a routine traffic violation." *Jones*, 215 Ill. 2d at 271.[3] Noting that an officer who makes an arrest is authorized to search the person of the arrestee (see *Chimel v. California*, 395 U.S. 752 (1969)), the majority in *Moorman* reasoned that, in *Jones*, the officer's lack of authority to conduct a search "necessarily means that he also lacked the authority to arrest the defendant." *Moorman*, 369 Ill. App. 3d at 198. However, in *Taylor*, this court disagreed, correctly observing that "since the officer in *Jones* did not initially arrest the defendant for the traffic violation, the issue of a lawful search incident to custodial arrest never arose." *Taylor*, 388 Ill. App. 3d at 177. For these reasons, the *Taylor* court properly concluded that neither *Cox* nor *Jones* can be read to hold that our state constitution forbids arrests for minor traffic violations. We reject statements in *Moorman* to the contrary.

¶ 8        Illinois follows a "limited lockstep" approach to interpreting state constitutional guarantees that correspond to rights secured by the United States Constitution. *People v. Caballes*, 221 Ill. 2d 282, 309-10 (2006). State constitutional provisions will be interpreted in harmony with their counterparts in the United States Constitution unless " 'a specific criterion–for example, unique state history or state experience–justifies departure from federal precedent.' " *Id.* at 309-10 (quoting Lawrence Friedman, *The Constitutional Value of Dialogue and the New Judicial Federalism*, 28 Hastings Const. L.Q. 93, 104 (2000)).

---

[3]In *Rawlings v. Kentucky*, 448 U.S. 98, 110-11 (1980), it was held that a search incident to an arrest may precede the arrest, so long as an arrest would have been lawful when the search occurred. That rule was inapplicable in *Knowles only* because the officer had initially decided to issue a citation rather than place the defendant under arrest for the traffic offense. See *United States v. Powell*, 483 F.3d 836, 841 (D.C. Cir. 2007); see also 3 Wayne R. LaFave, Search and Seizure § 5.2(h), at 134 (4th ed. 2004) ("the 'problem' in [*Knowles*] may be perceived to be the fact that the officer tipped his hand on the citation versus arrest question before the search"). Thus, the search in *Knowles* was not incident to an arrest that the officer was authorized to make when the search was conducted. The broad statement in *Jones* appears to overlook the significance of the issuance of the citation in *Knowles*.

Although the implications of *Cox* and *Jones* may be open to debate, absent a clear statement from our supreme court we decline to read those cases as authority that a police officer may not make a custodial arrest for a petty offense.

¶ 9    Defendant argues that a departure from the federal rule announced in *Atwater* is justified because "[t]here exists a long-standing state tradition of not allowing police officers to arrest citizens for fine-only traffic offenses." In support of this proposition, defendant relies principally on *People v. Watkins*, 19 Ill. 2d 11 (1960). But that case did not prohibit arrests for minor traffic offenses. Rather, the *Watkins* court held that a police officer had no authority to conduct a search incident to an arrest for such an offense, specifically, parking too close to a crosswalk. The *Watkins* court reasoned:

> "A uniform rule permitting a search in every case of a valid arrest, even for minor traffic violations, would greatly simplify our task and that of law enforcement officers. But such an approach would preclude consideration of the reasonableness of any particular search, and so would take away the protection that the constitution is designed to provide. ***
>
> A search incident to an arrest is authorized when it is reasonably necessary to protect the arresting officer from attack, to prevent the prisoner from escaping, or to discover fruits of a crime. But the violation involved in this case was parking too close to a crosswalk,–the kind of minor traffic offense that ordinarily results in a 'parking ticket' hung on the handle of the door of the car, telling the offender that it is not necessary to appear in court if he mails in the amount of his fine. Such an offense does not, in itself, raise the kind of inferences which justify searches in other cases. Some traffic violations would justify a search. The total absence of license plates, for example *** could reasonably suggest a serious violation of the law, as could an obscured license plate upon a car being driven in the early morning hours ***. But when no more is shown than that a car was parked too close to a crosswalk or too far from a curb, the constitution does not permit a policeman to search the driver." *Id.* at 18-19.

¶ 10    This analysis might have been helpful to defendant if it were still good law. It is clear, however, that it is not. In *People v. Hoskins*, 101 Ill. 2d 209 (1984), our supreme court rejected the case-by-case approach and embraced the following analysis stated in *United States v. Robinson*, 414 U.S. 218 (1973):

> " 'The authority to search the person incident to a lawful custodial arrest, while based upon the need to disarm and to discover evidence, does not depend on what a court may later decide was the probability in a particular arrest situation that weapons or evidence would in fact be found upon the person of the suspect. A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification. It is the fact of the lawful arrest which establishes the authority to search, and we hold that in the case of a lawful custodial arrest a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but is also a "reasonable" search under that Amendment.' " *Hoskins*, 101 Ill. 2d at 216 (quoting *Robinson*, 414 U.S. at 235).

¶ 11    According to defendant, "[s]ince *Watkins*, Illinois courts have applied its principles to

traffic stop cases countless times." Defendant cites *Jones*, *People v. Brownlee*, 186 Ill. 2d 501 (1999), and *People v. Jones*, 346 Ill. App. 3d 1101 (2004). But all three cases involve the permissible scope or duration of a traffic stop where there was no initial arrest for the traffic violation, and they have no bearing on the question before this court. Defendant also cites *People v. Davis*, 33 Ill. 2d 134 (1965). That case, which simply held that a police officer who discovered a tinfoil packet containing white powder in plain view during a traffic stop could arrest the driver and search the vehicle, lends no support to defendant's argument that Illinois has traditionally refused to permit arrests for petty offenses.

¶ 12 Defendant also takes issue with *Atwater*'s reasoning, but the lockstep doctrine would be largely meaningless if Illinois courts interpreting state constitutional provisions followed only those United States Supreme Court decisions with which they agreed. We note that in *Caballes* our supreme court discussed various approaches other states take in construing state constitutional provisions consisting of the same, or nearly the same, language as federal constitutional provisions. Under the so-called "interstitial approach" there are three reasons why a state court might depart from federal precedent: " 'a flawed federal analysis, structural differences between state and federal government, or distinctive state characteristics.' " *Caballes*, 221 Ill. 2d at 308 (quoting *State v. Gomez*, 1997-NMSC-006, ¶ 19, 932 P.2d 1). Notably, however, the *Caballes* court chose the term "limited lockstep" for the express purpose of avoiding confusion "with the very broad definition of the interstitial approach adopted by some courts." *Id.* at 310. The *Caballes* court did not suggest that a "flawed federal analysis" would ordinarily be a valid basis for departing from United States Supreme Court precedent. Accordingly, we will not conduct an independent analysis of the question settled in *Atwater*.

¶ 13 We next consider defendant's argument that the trial court erred in ordering him to pay $750 to reimburse the public defender for services performed before defendant retained private counsel. Section 113-3.1(a) of the Code of Criminal Procedure of 1963 (725 ILCS 5/113-3.1(a) (West 2008)) authorizes the trial court to order a criminal defendant for whom counsel has been appointed to pay a reasonable amount to reimburse the county or the state. However, prior to ordering reimbursement, the trial court must conduct a hearing regarding the defendant's financial resources. *Id.*; *People v. Love*, 177 Ill. 2d 550, 559 (1997). No such hearing was conducted here, and the State concedes that the order requiring payment must be vacated. However, although the State asks that the case be remanded so that a hearing can be conducted, defendant notes that section 113-3.1(a) provides that the hearing shall be held "no later than 90 days after the entry of a final order disposing of the case at the trial level." 725 ILCS 5/113-3.1(a) (West 2008). Defendant contends that, because the 90-day period has now expired, the case should not be remanded for a hearing. However, in *Love* our supreme court remanded for a hearing even though more than 90 days had passed since the disposition of the case in the trial court,[4] and we shall do the same here. See *People v. Gutierrez*, 405 Ill. App. 3d 1000, 1003 (2010), *appeal allowed*, No. 111590 (Mar. 30, 2011).

---

[4]In *Love* the petition for leave to appeal was allowed on January 29, 1997 (*People v. Love*, 171 Ill. 2d 576 (1997)), and the supreme court issued its decision on October 17, 1997 (*Love*, 177 Ill. 2d 550).

¶ 14　　For the foregoing reasons we affirm the denial of defendant's motion to quash and suppress. We vacate the order that defendant pay $750 for the services of the public defender and remand for a hearing on defendant's ability to pay.

¶ 15　　Affirmed in part and vacated in part; cause remanded.